**UNITED STATES COURT OF APPEALS**

**FOR THE FIFTH CIRCUIT**

No. 95-20029
Summary Calendar

HISPANIC EDUCATION COMMITTEE, ET AL.,

Plaintiffs-Appellants,

VERSUS

HOUSTON INDEPENDENT SCHOOL DISTRICT, ET AL.,

Defendants-Appellees.

Appeal from the United States District Court
For the Southern District of Texas
(CA H 94 1065)

(August 29, 1995)

Before GARWOOD, WIENER, and PARKER, Circuit Judges.

PER CURIAM:[*]

Appellants brought this action alleging that Appellees, in their appointment of a new school superintendent, violated Appellants' constitutional rights to free speech and equal

---

[*] Local Rule 47.5 provides:
"The publication of opinions that have no precedential value and merely decide particular cases on the basis of well-settled principles of law imposes needless expense on the public and burdens on the legal profession."
Pursuant to that Rule, the Court has determined that this opinion should not be published.

protection, as well as provisions of the Texas Open Meetings Act. Appellants claim that the school board selected a superintendent outside a public meeting and intentionally excluded Hispanics from the selection process. Appellants sought declaratory and injunctive relief. Appellees moved for summary judgment, which the district court granted. Appellants filed a timely notice of appeal. We affirm.

## I. FACTS

Some time before January 20, 1994, the then superintendent of schools for the Houston Independent School District ("HISD"), Dr. Frank Petruzielo, conveyed to the Board of Education ("the Board") his intention to resign from that position. After that point, but prior to January 20, 1994, certain members of the Board privately discussed the qualifications of Dr. Rod Paige to fill the impending vacancy. On January 20, 1994, the Board then met in a closed or executive session to consider the appointment of Dr. Paige to the superintendent's job. After the executive session and in a public meeting, the Board voted to ask Dr. Paige to consider becoming the next superintendent. At a public meeting on February 3, 1994, the Board voted to officially offer Dr. Paige the job of superintendent. On February 7, 1994, the Board publicly voted to approve the employment contract with Dr. Paige.

## II. SUMMARY JUDGMENT STANDARD

2

A court may terminate litigation by rendering a summary judgment when no genuine issue of material fact exists and the moving party is entitled to judgment as a matter of law. *Celotex Corp. v. Catrett*, 477 U.S. 317 (1986). Once the party seeking summary judgment makes the initial showing, negating any disputed, material fact, the party opposed to the motion must offer evidence reflecting the existence of one or more genuine issues of material fact. *Topalian v. Ehrman*, 954 F.2d 1125, 1131 (5th Cir. 1992), *cert. denied*, 113 S. Ct. 82 (1992). The non-movant must direct the court's attention to specific, triable facts in the record. *Nissho-Iwai Am. Corp. v. Kline*, 845 F.2d 1300 (5th Cir. 1988). The bare allegations of the pleadings will not suffice to show the existence of a genuine issue of material fact. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249, 106 S. Ct. 2505, 2510 (1986). Finally, although the Court must make all reasonable inferences in favor of the nonmoving party, "[t]here is no issue for trial unless there is sufficient evidence favoring the nonmoving party for a jury to return a verdict for that party." *Anderson*, 106 S. Ct. at 2511.

### III. TEXAS OPEN MEETINGS ACT CLAIMS

A. <u>Private Meetings Prior to January 20, 1994</u>:

The Texas Open Meetings Act ("TOMA") defines a "meeting" as "a deliberation between a <u>quorum</u> of a governmental body, or between a <u>quorum</u> of a governmental body and another person, during which public business or public policy over which the governmental body

has supervision or control is discussed or considered or during which the governmental body takes formal action." Tex. Gov. Code § 551.001(4) (emphasis added). The Board consists of nine members. Therefore, to have a quorum and thereby a meeting to which the TOMA would be applicable, at least five members must be present.

Appellants present no evidence to show that a quorum existed at any of the pre-January 20, 1994, meetings of which they complain. Therefore, the TOMA is inapplicable to these private discussions.

Appellants allege that the Board improperly held these private meetings in numbers less than a quorum in order to circumvent the formal requirements of the TOMA, in violation of the criminal conspiracy provision, § 551.143. That provision is inapplicable to this suit, as enforcement is limited to the local prosecutor. Tex. Att'y Gen. LA-92-9 (1992).

B. <u>The Executive Session at the January 20, 1994 Meeting</u>:

In a closed, executive session prior to the public portion of the meeting on January 20, 1994, the Board met for what the agenda termed "Consideration of Appointment of New Superintendent of Schools; Interim or Acting Superintendent of Schools; and/or Discussion of Process for Selection of New Superintendent of Schools." Appellants contend that this meeting went beyond the exception to the TOMA for personnel matters. That exception allows for a private meeting "to deliberate the appointment . . . of a public officer or employee." Tex. Gov. Code § 551.074(a)(1). Appellants make two arguments for the inapplicability of the

4

personnel exception: (1) that the discussion of the selection process did not concern the "appointment" of Dr. Paige and was therefore outside the scope of the exception; and (2) that the Board did more than "deliberate" because it actually determined that Dr. Paige would be offered the position.

Neither argument is availing. In this case, deliberations concerning the selection process were inseparable from the appointment of a specific public employee. The record does not indicate any discussion of policy concerning how the HISD should conduct a general search for superintendent. Rather, the record shows that certain trustees believed that existing support by a majority of trustees for a known candidate would have made a lengthy and open application process ineffective and wasteful. The expression of such a sentiment does not go beyond deliberating "the appointment" of Dr. Paige.

Furthermore, the Board did not exceed the personnel exception by making a final decision in the closed session. Section 551.102 provides that "[a] final action, decision, or vote on a matter deliberated in a closed meeting under this chapter may only be made in an open meeting. . ." Tex. Gov. Code § 551.102. Appellants contend that the Board members actually resolved the issue of who would be offered the job in the private session and then merely took a formal vote on the matter in the open meeting. Appellants cite *Board of Trustees of Austin Indep. Sch. Dist. v. Cox Enter., Inc.*, 679 S.W.2d 86, 89 (Tex. App.--Texarkana 1984), *aff'd in part, rev'd in part*, 706 S.W.2d 956 (Tex. 1986), for the proposition that

5

"[t]o allow public officials to make their actual decisions in private sessions and then merely report their decision or present a formal, unanimous front to the public in an open meeting would thwart much of [the purpose of the TOMA]."

The present case is inapposite. There is no evidence of a final decision or vote taking place in the closed session. Rather, the record shows that members of the Board merely expressed support for Dr. Paige. The actual decision and vote took place in the open meeting, as required by law.


IV. CONSTITUTIONAL CLAIMS

Appellants contend that the Board violated the equal protection rights of members of the Hispanic community by denying them their rights to political expression and participation. However, the Supreme Court has provided guidance in dealing with such claims:

> Policymaking organs in our system of government have never operated under a constitutional constraint requiring them to afford every interested member of the public an opportunity to present testimony before any policy is adopted. . . . Public officials at all levels of government daily make policy decisions based only on the advice they decide they need and choose to hear. To recognize a constitutional right to participate directly in government policymaking would work a revolution in existing government practices.

*Minnesota State Bd. for Community Colleges v. Knight*, 465 U.S. 271, 284, 104 S. Ct. 1048, 1066 (1984). There is no constitutional right to be included in private political consultations by government officials.

6

Furthermore, the record shows that Appellants were provided an opportunity to address the Board at the January 20, February 3, and February 7, 1994, meetings. There is no evidence to support an inference of intentional exclusion on the basis of race or ethnicity.

WE AFFIRM.