**KANSAS CITY STAR COMPANY,**
Respondent,

v.

**Sue FULSON, et al., Appellants.**

**No. WD 45843.**

Missouri Court of Appeals,
Western District.

Aug. 17, 1993.

Allan J. Hallquist, Blackwell, Sanders, Matheny, Weary & Lombardi, Kansas City, for appellants.

Jonathan R. Haden, Lathrop & Norquist, Kansas City, for respondent.

Before BRECKENRIDGE, P.J., SHANGLER, Senior Judge, and SPINDEN, J.

BRECKENRIDGE, Presiding Judge.

The Kansas City Star Company (the Star) sued eight members of the Kansas City School Board (the Board) claiming they violated the Missouri Open Meetings Law, §§ 610.010 to 610.030, RSMo Cum.Supp. 1992,[1] by attending a weekend workshop. Prior to the workshop, the Board had experienced difficulties functioning effectively as a decision-making body due to personality differences. The Board had received negative press coverage because of its disharmony. The purpose of the workshop was to improve interpersonal communications among the Board members. The trial court found a violation of the Open Meetings Law, fined the eight Board members and issued an injunction against future violations. Appellants raise four points on appeal arguing that the trial court erred in: 1) finding that appellants violated the Open Meetings Law because the workshop was not a "public meeting;" 2) holding that appellants' constitutional rights to free association, free speech and privacy were not violated; 3) holding that the workshop constituted a purposeful violation of the Missouri Open Meetings Law; and 4) entering a permanent injunction against the Board.[2] The judgment is reversed.

The Kansas City School Board consists of nine unpaid members who are elected to represent subdistricts within the School District of Kansas City, Missouri. This appeal concerns the following six members who were serving on the Kansas City School Board in May of 1989: Sue Fulson, Dr. Sandra Walker, William DeFoor, Jr., Paul B. Ballard, James P. Bonadonna and Dr. Julia H. Hill. Appellants and two other members of the Board, Fred Heine and Carl Struby, attended a two-day workshop on the weekend of May 6, 1989 at The Inn at Grand Glaize in Osage Beach, Missouri.[3] The workshop was funded entirely by the Civic Council of Greater Kansas City and conducted by Dr. Harvey Thomas, a psychologist.

While the workshop was still in the organizational phase, the Board sought legal advice from attorney Allan V. Hallquist to determine whether the proposed workshop would violate the Missouri Open Meetings Law. Hallquist advised the Board that the workshop would not violate the Open Meetings Law if the Board only discussed the improvement of interpersonal relations and communication skills. Hallquist also advised the Board that they could not discuss school business at the workshop. Hallquist was retained to attend the entire workshop to insure that the Open Meetings Law was not violated. The Board did not give public notice of the workshop.

---

1. All statutory citations are to Revised Missouri Statutes Cumulative Supplement 1992, unless otherwise indicated.

2. This opinion will use "Board" both when referring to the Kansas City School Board in its official function as an entity and when referring to the eight members who attended the retreat.

3. Fred Heine and Carl Struby, defendants below, each paid their $1.00 fines and do not join in the appeal.

On Friday evening, May 5, 1989, Board members Fulson, Walker, Hill, Heine and Bonadonna met Hallquist for dinner at the Inn at Grand Glaize. Board members Struby and Ballard arrived at the Inn later that evening. On Saturday, May 6, 1989, these seven Board members and Hallquist had breakfast together. After breakfast the Board convened in a room reserved for its activities. As Dr. Thomas began the workshop, Michael Mansur and Bill Dalton, both reporters for *The Kansas City Star* newspaper, entered the room to cover the meetings for the newspaper. Hallquist explained to Mansur and Dalton that the workshop was not a meeting open to the public. The reporters objected to their exclusion, but left as requested. After the reporters left the meeting room, Board member DeFoor arrived.

During the workshop, appellants participated in role-playing, examined their behavior as a group and discussed ways to improve the Board's communication and teamwork. On Saturday afternoon, the Board was given a sheet titled "Evidence of Interpersonal Competence" which listed tenets for constructive group interaction. The Board was to study the list and consider it in terms of their relationships with each other. The Board was then instructed to prioritize the items listed as to the most important in terms of being able to deal effectively with each other. A part of this process occurred while the Board members were divided into two consulting groups. The record does not reveal the identity of the Board members in each group.

On Sunday morning, the two groups met jointly to report the results of their discussions. Dr. Thomas' handwritten list entitled "Results and Recommendations" was compiled by combining the suggestions from each group as follows:

1. Agree to adopt and abide by *Robert's Rules of Order.*
   * Have a workshop on same
   * Ask Dr. Bowman to view a tape of one of our meetings.
2. Invest Carl with "Sergeant of Arms" powers.

3. One person speaks at a time, and to the Chair.
4. Say "thank you" at end of remarks.
5. Laugh (use humor) to lighten atmosphere.
6. Check automated system to speak in sequence.
7. Call "time out" when exchanges become personalized. Any member can call "time out."
8. Avoid public floggings—Try to correct in private.

When the first and second recommendations were raised, Hallquist interrupted to inform the Board that these were not appropriate matters to be discussed. Thereafter, the remaining items on the list were discussed.

The trial court found that the "Results and Recommendations" compiled at the workshop were similar to the "Board–Administration Operating Principles" submitted to the Board in August, 1989. The proposed Board–Administration Operating Principles were submitted to the Board for consideration at the suggestion of Superintendent Dr. George Garcia. The proposed Board–Administration Operating Principles, a seven-page document with a two-page addendum, did not include the adoption of *Robert's Rules of Order* or the appointment of a sergeant-at-arms. The record does not reveal whether the Board–Administration Operating Principles were ever acted upon by the Board.

On May 9, 1989, the Star filed a Petition for Declaratory Judgment, Injunctive Relief and Assessment of Civil Fines. After a one-day bench trial, the trial court found that appellants purposely violated the Missouri Open Meetings Law because the workshop was a "public meeting" under § 610.010(3). The trial court imposed a one dollar fine on the five Board members who testified in court and a three hundred dollar fine on the three Board members who did not testify. The trial court also issued a permanent injunction against the Board to prevent future violations of the Open Meetings Law.

On appeal of a court-tried case, the court will affirm the judgment of the trial court unless there is no substantial evidence to support it, it is against the weight of the evidence or the trial court erroneously declared or applied the law. *Murphy v. Carron*, 536 S.W.2d 30, 32 (Mo. banc 1976). The evidence and all reasonable inferences therefrom are to be viewed in the light most favorable to the judgment. *T.B.G. v. C.A.G.*, 772 S.W.2d 653, 654 (Mo. banc 1989). The appellate court will defer to the trial court's findings of fact because the trial court has a superior opportunity to judge the credibility of the witnesses. *Brawley v. McNary*, 811 S.W.2d 362, 365 (Mo. banc 1991).

In Point I, appellants claim the trial court erred in finding that they violated the Open Meetings Law by attending the workshop because the workshop was not a "public meeting" under § 610.010(3). Appellants claim that no "public business" was discussed and that the workshop was an informal gathering organized for the social purpose of encouraging better interpersonal relationships between the Board members. To support this argument, appellants point to evidence of their intention not to conduct any school board business during the workshop and evidence of the extensive precautions taken by the Board in order to insure compliance with the Open Meetings Law.

Section 610.027.2 provides that the Star, as the party seeking enforcement of the provisions of the Open Meetings Law, has the initial burden of persuasion. It must show that the Board is a governmental body subject to the provisions of §§ 610.-010 to 610.030, and that the Board held a closed meeting. Section 610.027.2. There is no dispute that the Board is a "public governmental body" subject to the requirements of the Open Meetings Law. Appellants concede that the workshop was a gathering of a quorum of the Board which was not open to the public or representatives of the news media. Appellants further concede that no notice was given of the time, date and place of the meeting, nor reference to a statutory exception permitting the closure of the meeting, as required

prior to closing a public meeting under § 610.022.2. Based upon these undisputed facts, the Star met its burden. The burden of persuasion then shifted to the appellants to prove compliance with the statutory requirements of the Open Meetings Law. Section 610.027.2

Prior case law has not addressed the application of the Open Meetings Law in the context of facts similar to those in the instant case. A fundamental objective of statutory interpretation is to ascertain the intent of the legislature from the language of the statute and, if possible, give effect to that intent. *Brownstein v. Rhomberg–Haglin & Assoc.*, 824 S.W.2d 13, 15 (Mo. banc 1992). The language of the statute is to be given its plain and ordinary meaning. *Id.* It is presumed that all words utilized by the legislature have a separate and individual meaning. *Battis v. Hofmann*, 832 S.W.2d 937, 939 (Mo.App. 1992). If the language of the statute is unambiguous, there is no basis for construction of the statute and the court must give effect to the statute as it is written. *State ex rel. Mo. State Bd. v. Southworth*, 704 S.W.2d 219, 224 (Mo. banc 1986). Courts, however, look beyond the plain and ordinary meaning of the statute when its meaning is ambiguous or will lead to an illogical result which defeats the intent of the legislature. *State ex rel. Md. Heights, etc. v. Campbell*, 736 S.W.2d 383, 387 (Mo. banc 1987).

All provisions of a legislative act must be construed together and harmonized, if reasonably possible. *Hagely v. Board of Educ.*, 841 S.W.2d 663, 667 (Mo. banc 1992). Statutes which are consistent and relate to the same subject are *in pari materia* and, regardless of whether adopted on the same or different dates, should be construed together as though they were one statute. *State ex rel. Rothermich v. Gallagher*, 816 S.W.2d 194, 200 (Mo. banc 1991). It is presumed that the legislature does not intend to enact absurd laws. *David Ranken, Jr. Tech. Inst. v. Boykins*, 816 S.W.2d 189, 192 (Mo. banc 1991). As a result, statutory construction

should avoid unreasonable or unjust results. *Id.*

■■■■■■ Chapter 610 is to be construed liberally in order to promote the public policy of open government. Section 610.011; *Mo. Protection & Advocacy Serv. v. Allan,* 787 S.W.2d 291, 295 (Mo.App.1990). The exceptions to the Open Meetings Law and the portion providing for the imposition of civil fines are to be strictly construed. *Kansas City Star Co. v. Shields,* 771 S.W.2d 101, 104 (Mo.App.1989).

■■■■ Appellants base their claim of trial court error in Point I on what they contend was an improper application of the definition of "public meeting" to the facts of this case. They argue that no public business was discussed, decided or public policy formulated, and that the workshop was an informal gathering of the Board members for social purposes. Appellants assert that the trial court erred in its definition of "public business" when it found that the divisive and combative behavior of the school board was public business.

In deciding Point I, this court must determine if the Board violated the Open Meetings Law 1) by holding a closed meeting or 2) by failing to give notice of the meeting. The purpose of the Open Meetings Law is to promote the public policy articulated in § 610.011.1 which requires "that meetings, records, votes, actions, and deliberations of public governmental bodies be open to the public." In furtherance of that policy, § 610.011.2 mandates that all public meetings of public governmental bodies be open unless the statute authorizes a closed meeting. Section 610.010(3) defines "public meeting" as:

> [A]ny meeting of a public governmental body subject to sections 610.010 to 610.030 at which any public business is discussed, decided, or public policy formulated. The term "public meeting" shall not include an informal gathering of members of a public governmental body for ministerial or social purposes when there is no intent to avoid the purposes of this chapter[.]

In applying the plain and ordinary meaning of the language in §§ 610.010(3) and 610.011.2, a public governmental body violates the Open Meetings Law by holding a closed meeting only if public business is discussed at such meeting. Section 610.010(3) specifically exempts from the provisions of the Open Meetings Law informal gatherings for ministerial or social purposes without regard to whether public business was actually discussed at the informal gathering, so long as there was no intent to circumvent the Open Meetings Law.[4] The statute does not exclude, however, a formal gathering, social or otherwise, at which public business is discussed.

■■■■■■ The issue of whether public business was discussed is relevant only if the meeting was not an informal gathering for social purposes. This court will, thus, first consider whether the Board workshop fits within this exception to the Open Meetings Law. Because the statute does not define the terms "informal" or "social," the intent of the legislature must be ascertained from the plain and ordinary meaning of the words and phrases used. *Wollard v. City of Kansas City,* 831 S.W.2d 200, 203 (Mo. banc 1992). The plain and ordinary meaning is usually derived from the dictionary. *Abrams v. Ohio Pacific Exp.,* 819 S.W.2d 338, 340 (Mo.1991). A "social" gathering by nature is one where persons gather in pleasant companionship with friends and associates. Webster's Third International Dictionary 2161 (1976). The plain and ordinary meaning of "informal" as derived from the dictionary is "not formal; conducted or carried out without formal, regularly prescribed or ceremonious procedure; unofficial." *Id.* at 1160. The definition of "unofficial" is "not belonging to, emanating from, or sanctioned or acknowledged by a governing body." *Id.* at 2505.

■■■■ The context of "informal" and "social" in the statute as a whole is relevant to determining their meaning. The legislature provides an absolute exclusion for informal social gatherings where there is no

**4.** None of the parties claimed that the retreat    was ministerial in nature.

intent to circumvent the purposes of Chapter 610, but does not provide an exclusion for formal social gatherings. The fact that the legislature makes this distinction establishes the context in which the words must be defined. The intent of the Open Meetings Law is to insure the public open access to meetings of public governmental bodies where public business is conducted. Social gatherings which are informal, in that they do not have a regular ceremonious procedure or are not sanctioned or acknowledged by a public governmental body, are not generally a forum for meaningful discussion of public business. By excluding informal social gatherings, the legislature recognized that protection of the public's interest in the open conduct of public business does not require that the public have access to such meetings.

■ The workshop was not an informal gathering. The fact that the workshop was located in the casual, vacation-type setting of the Lake of the Ozarks did not make it an informal gathering. Members of the Board, in their official capacity and with the authorization of the Board, carefully planned and organized the workshop. Dr. Thomas, a psychologist and management consultant who conducts management seminars for businesses and corporations, was hired to present a program to teach the Board skills for constructive communication.

■ Neither was the workshop a social gathering. The members of the Board did not organize the workshop for companionship, but rather with the intent of working to eliminate interpersonal conflicts.

■ Because the workshop was not an informal gathering, this court must next examine whether it was a public meeting at which public business was conducted. The term "public business" is used in § 610.-010(3) but neither statutes nor case law define the term. A portion of the trial court's interpretation of the term "public business" states:

**5.** This definition was adopted from 29 Del.C. § 10002(b) (1992), a Delaware statute defining "public business." Such interpretation commu-

Arguably, divisive and combative behavior becomes public business when it disrupts board deliberations, diminishes board performance and establishes a widely perceived negative public image. If so, then remedial efforts also constitute public business, especially when the desired impact is to reduce or minimize public discussion in favor of trust and teamwork.

\* \* \* \* \* \*

When fractious board behavior during deliberations at public meetings attracts widespread public attention, criticism and concern as these circumstances depict, such behavior constitutes public business. Accordingly, when such fractious behavior attains public prominence, public officials forfeit their rights, if any, to private "group" solutions....

It also found that discussion and debate occurred at the workshop "regarding specific public issues and public matters in the formulation of public policy." A finding that the "Results and Recommendations" compiled at the workshop were devised to govern public deliberation and debate served as the basis for the trial court's determination that public policy was formulated. The trial court cited similarities between the "Results and Recommendations" and the Board–Administration Operating Principles, considered by a Board committee three months after the workshop, as confirmation that the matters discussed at the workshop were public business or public policy.

Such a broad application of "public business" is not supported by the plain and ordinary meaning of the term nor the case law. Matters of public business are not synonymous with matters of public interest. Public business encompasses those matters over which the public governmental body has supervision, control, jurisdiction or advisory power.[5] Activities to improve the personal relations of individuals who serve together on a public governmen-

nicates the plain and ordinary meaning of the term.

tal body, if limited to the issues of social interaction, are not matters of public business.

With one exception, the workshop focused entirely on personal relations and not on business which would come before the Board. The Board educated itself on the legalities of the Open Meetings Law and enlisted the supervision of its attorney to guarantee that the discussion was limited to non-business matters. There was an additional motive to forbid discussion of public business at the workshop because Dr. Thomas thought it would interfere with the purpose of the workshop. Dr. Thomas believed that if Board members focused on school issues they would not think about their personal feelings. The goal of the workshop was to help the Board members recognize how they related to each other and to learn the skills which would allow them to interact in a pleasant and civil manner.

The matters addressed at the workshop were centered around the basic concepts of productive human interaction. The workshop included an analysis of each Board member's role in the group interaction and process of decision-making. The Board was encouraged to recognize certain courtesies to improve the effectiveness of group interaction such as listening, taking turns when speaking, avoiding personal attacks, encouraging participation by everyone, and stopping to take a break when tensions escalate. These concepts do not concern school issues that come before the Board in its official capacity. These communication skills are common sense concepts germane to any gathering of individuals, and do not have any particular application to Board business. As a matter of law, it was not public business for the Board to discuss the betterment of interpersonal relationships in the context of a workshop when the discussions of interpersonal relationships did not include reference to any business matters which would come before the Board for consideration and action.

The trial court did not rely solely on the purpose of the workshop in determining that the Open Meetings Law was violated. The trial court found that public business was discussed and public policy formulated when the Board held discussions culminating in the "Results and Recommendations." One of the recommendations was the adoption of *Robert's Rules of Order* and the scheduling of an explanatory workshop by a known parliamentarian. The empowering of a sergeant-of-arms was another recommendation.

This court is not required to decide whether these matters rise to the level of public business, because the trial court's findings are not supported by the evidence. The Board, as a group, was not present for the discussion of the first two recommendations. Any discussion of parliamentary procedure and the sergeant-of-arms occurred in only one of the two consulting groups.[6] There is no evidence as to which four Board members were present in that group. Although the two items were later related to all the Board members attending the workshop, Hallquist interrupted the proceedings before any discussion occurred. With regard to the matters in the first two recommendations, no discussion by the Board occurred and no public policy was formulated.

The other six recommendations on the "Results and Recommendations" list were basic concepts for effective communication and group interaction which do not rise to the level of public business or policy. The trial court defined public business too broadly in the instant case and found matters to be public business that, as a matter of law, are not. The Board was not in violation of § 610.011, because no public business was discussed or public policy formulated at its closed meeting.

■■■ Upon a finding that the Board did not violate § 610.011 by holding a closed meeting, this court must next consider whether the Board's workshop violated any other sections of the Open Meetings Law.

**6.** Whether the statute was violated by that small group's discussion is not an issue before this court because the record does not specifically identify the members of that group.

Section 610.022 sets forth the procedure a public governmental body must follow in closing a public meeting. The statute sets forth two methods: 1) a public governmental body may vote, by an affirmative public vote of a majority of a quorum of the body, to close a meeting; or 2) a public governmental body may give notice of its intention to hold a closed meeting and cite a specific exception from § 610.021. Section 610.021 lists a number of specific situations in which a public governmental body is authorized to close meetings, records and votes. The statutory exceptions involve subjects of a sensitive nature wherein public disclosure would compromise either individual privacy interests or the position of the governmental body in negotiations or litigation.

The Board's workshop does not qualify under any of the closed meeting exceptions set forth in § 610.021 and the Board did not vote publicly, by a majority of a quorum, to close the workshop. The Board did not violate the Open Meetings Law by closing the workshop to the public, however, since the workshop was not a public meeting. The provisions of §§ 610.021 and 610.-022 are expressed in terms of meetings open to the public and do not contemplate closed meetings, such as the workshop, at which no public business is to be discussed. Such meetings fall outside the scope of the statute.

The alternative would be to interpret the statute to encompass all meetings, except those within § 610.021, rather than only public meetings. This would require a public vote of a majority of a quorum of a public governmental body as well as notice of the time, place and date prior to each such meeting. Under this interpretation, the workshop and any meeting where there is no intention to discuss public business, including formal social gatherings, would require compliance with such statutory closure provisions. Such an interpretation is absurd and unreasonable and does not promote the intent of the legislature that the public have access to meetings at which public business is conducted.

The public is protected against the intentional circumvention of the Open Meetings Law, or the inadvertent discussion of public business at a non-public meeting, by the variety and extent of the available statutory remedies. Section 610.027. The public is also protected by the manner in which the statute allocates the burden of proof in proceedings claiming a statutory violation. Section 610.027.2 requires that, after the party seeking enforcement has demonstrated that the public governmental body is subject to the Open Meetings Law and has held a closed meeting, the burden of persuasion shifts to the governmental body to prove compliance with the statute.

■■■ There remains only one matter left for consideration and that is whether the Board should have given notice of the meeting in accordance with § 610.020.1. This statute requires that a public governmental body give notice of "the time, date, and place of *each* meeting." Section 610.-020.1 (emphasis added). Generally, twenty-four hour advance notice must be given in a manner reasonably calculated to inform the public and the media of the meeting. *Id.*

■■■ The plain language of § 610.020 requires notice of "each" meeting and unlike the closure provisions does not limit its application to "public" meetings. The general statutory provisions for giving notice do not provide for notice of closed meetings. As previously discussed, § 610.022 has specific provisions for notice of closed meetings. It is a well-established rule that when one statute addresses a particular subject in a general manner and a second statute treats the same subject in a specific manner, the specific statute supersedes the general statute. *O'Flaherty v. State Tax Com'n of Mo.*, 680 S.W.2d 153, 154 (Mo. banc 1984). The Board workshop was not required to be open to the public and, thus, if any notice provisions were applicable they would be the specific procedures in § 610.022. As those provisions have been found inapplicable to a closed meeting where there is no intention to discuss public business, notice was not required prior to the workshop.

The trial court erroneously applied the law in its finding that public business was discussed and public policy was formulated at the Board workshop. The workshop, although a closed meeting held without notice, did not violate the Open Meetings Law because no public business was discussed. The judgment is reversed.

All concur.