No. 94-4035

In re:  Kansas City Star          *
Company,                          *  Petition for Writ of Mandamus
                                  *
              Petitioner.         *


Submitted:  February 1, 1995

Filed:  January 4, 1996


Before MCMILLIAN, HEANEY, and JOHN R. GIBSON, Circuit Judges.


HEANEY, Circuit Judge.

The United States District Court for the Western District of Missouri held that the Missouri Sunshine Law does not prevent the Kansas City, Missouri School District Board of Directors from appearing before the district court's Desegregation Monitoring Committee in closed session.  Petitioner seeks a writ of mandamus instructing the district court to hold its order in abeyance.  We deny the writ of mandamus, but remand the case for further tailoring of the district court's order in consideration of ideals of comity and the underlying concerns of state law.

BACKGROUND

In 1986, the United States District Court created a Desegregation Monitoring Committee (DMC), consisting of citizens and experts, to "oversee implementation of the court's orders by conducting evaluations, collecting information, and recommending modifications in the orders" regarding the implementation of the desegregation remedy. Jenkins v. Missouri, 639 F. Supp. 19, 41-43 (1986). This court confirmed the propriety of the DMC. Jenkins v. Missouri, 807 F.2d 657 (8th Cir. 1986), cert. denied, 484 U.S. 816 (1987). In effect, the DMC serves as a buffer among the various parties in the Jenkins litigation: parties are required to submit their disputes to the DMC, which then attempts to find a resolution without formal litigation. Any DMC action is subject to de novo review by the district court. At the DMC's request, the Kansas City, Missouri School District Board of Directors (the Board) attended occasional closed-door meetings with the DMC Executive Committee.

Following one such meeting on June 20, 1994, a representative of the Kansas City Star Company (the Star) contacted the Board to complain that the closed meetings violated the Missouri Sunshine Act, Mo. Ann. Stat. ch. 610 (Vernon Supp. 1995) (the Act). Specifically, the Star asserted that the meetings in question were "public meetings" as defined by § 610.010(5) of the Act, and therefore, the meetings violated the Act's prohibition on closed

2

sessions unless the meetings were limited to the Act's designated exclusions.  See Mo. Ann. Stat. § 610.021.

On July 18, 1994, the Board's general counsel advised the DMC of the dispute and the Board's conclusion that the Act prevented it from attending closed meetings.  On September 7, 1994, the DMC Executive Committee notified the Board that matters relating to the desegregation litigation compelled the DMC to exercise its power to meet in closed session with litigant parties;  moreover, it considered the closed meetings to be "consistent with areas of exception under the [Act] and reasonable in view of the DMC's responsibility to the Federal District Court."  (Letter from Eubanks, DMC Chair, to Dittmeier, the Board's general counsel, of 9/7/94, at 2).  It then informed the Board that its presence was required at a September 19th closed-door meeting.  The meeting's agenda was to include 1) the Board's intended direction in complying with the district court's August 15, 1994 order regarding status reports and the Long-Range Magnet Renewal Process ("LRMRP"), 2) the parameters of future discussions regarding the LRMRP, 3) the type of information that the DMC would be requesting during the renewal process and the intended dissemination of such material, and 4) the qualifications and selection process for the Director of Traditional Schools and principals for King and Nowlin middle schools.

A separate letter to the President of the Board, Dr. Julia H. Hill, officially advised Board members that their presence was required.  After learning of the DMC's position, the Star advised the Board that it would file suit if Board members met behind closed doors.  In a letter dated September 9, 1994, Hill informed the DMC that the Board did not feel at liberty to attend the closed session scheduled for September 19th without a judicial resolution of the dispute.  Board members did not attend the meeting.

On September 20, 1994, the DMC's Executive Committee voted to take exception to the Board's failure to appear.  It further directed the Board to attend a meeting scheduled for October 17, 1994.  On September 29, 1994, the Board appealed the DMC's September 20th resolution to the district court.  The Star was permitted to file an amicus curie brief.  On November 2, 1994, the district court entered an order denying the Board's appeal.  In the order, the district court expressly authorized the DMC to require members of the Board, either individually or jointly, to attend closed session with the DMC for the purpose of discussing any issue relevant to the implementation of the remedial plan.

The district court found that the closed meetings between the DMC and the litigants had resulted in "candid discussion about the issues involved with implementing the remedial plan which, in turn, [decreased] the amount of time, energy, and expense required by the great number of appeals."  As the basis for its decision, the

4

district court found that 1) the DMC was not a "public governmental body" as defined by the Act, but rather an arm of the court; and 2) the proposed meetings were not "public meetings" of the Board, which neither convenes nor takes official action at such meetings, but were DMC meetings at which the Board's attendance was required.

On November 19, 1994 the Board met in a closed session with the DMC to discuss the agenda items of the September 19th meeting. No public notice was posted, nor a reason for the closed meeting provided. The Star petitioned this court for a writ of mandamus directing the district court to hold its order in abeyance. On January 13, 1995, this court ordered the DMC Executive Committee to refrain from holding closed meetings until further instruction was given from this court.

The only issue before this court is the application of the Act to the DMC Executive Committee closed-door meetings at which the Board appears; a First Amendment challenge to the district court's order has not been raised and is not considered.

DISCUSSION

I. Writ of Mandamus

Mandamus relief is an extraordinary remedy that is appropriate only under exceptional circumstances where a judicial usurpation of

5

power is established.  <u>Allied Chemical Corp. v. Daiflon, Inc.</u>, 449 U.S. 33, 35 (1980).  To avoid placing the district court in the place of a litigant and creating piecemeal appellate litigation, the Supreme Court has required that a party seeking issuance of a writ of mandamus must have no other adequate means to attain relief and must demonstrate that its right to issuance of the writ is "clear and indisputable".  <u>Id.</u>; <u>accord</u> <u>In re Burlington Northern, Inc.</u>, 679 F.2d 762, 767 (8th Cir. 1982).

In determining whether to grant mandamus relief, the following factors are relevant considerations:  1) the party seeking the writ has no other adequate means to attain relief; 2) the petitioner will be damaged or prejudiced in a way not correctable on appeal; 3) the district court's order is clearly erroneous as a matter of law; 4) the district court's order is an oft-repeated error, or manifests a persistent disregard of the federal rules; and 5) the district court's order raises new and important problems or issues of law of first impression.  <u>In re Bieter</u>, 16 F.3d 929, 993 (8th Cir. 1994) (adopting <u>Bauman v. United States Dist. Court</u>, 557 F.2d 650, 654-55 (9th Cir. 1977)).

As a threshold issue, we focus on the third factor:  Was the district court's decision that the closed-door meetings are not subject to the Act clearly erroneous as a matter of law?

6

First, the district court determined that the DMC was not covered by the Act. On appeal, the Star argues that the DMC is a public governmental body, citing language of the Act regarding "judicial entities when operating in an administrative capacity," § 610.010(4). Yet reading the statute as a whole, including the definition of a public governmental body, leads us to the conclusion that the statute is aimed at state-created bodies. Specifically, the Act defines public governmental bodies as entities "created by the constitution or statutes of this state, by order or ordinance of any political subdivision or district, judicial entities when operating in an administrative capacity, or by executive order." § 610.010(4). The Star's argument fails to recognize the important distinction between federal and state governmental bodies by ignoring the fact that the DMC was created by a <u>federal</u> court to monitor the implementation of a remedy for constitutional violations. The Star would read the phrase "judicial entities" without any limitation to those created by the <u>state</u> constitution or statutes. Thus, according to its interpretation, any governmental body created by any federal court, such as the case here, or even one created by the President of the United States through executive order would be subject to the limitations imposed by this state statute. This cannot be accurate. The Star's interpretation would permit the Missouri State Legislature to subject the federal government to all state regulations, including those found in the Act. Reference to the Supremacy Clause of the United States Constitution is sufficient to

7

refute this claim.  Therefore, the district court's holding that the DMC, as an arm of the federal court, falls outside the scope of the Act is correct.[1]

Second, the district court found that the Board was a public governmental body as defined by the Act, and therefore its meetings were subject to the requirements imposed by the Act.  There is no disagreement on this point.

Finally, the district court held that the closed-door meetings in question were DMC meetings, called and controlled by the DMC, in which the Board neither formally convenes nor takes official action.  It therefore concluded that the meetings did not trigger the Act's provisions.  The Star disagrees:  it argues that the Act prevents the Board, as a public governmental body, from meeting behind closed doors in any context except for those instances expressly provided by the Act.  Consistent with this position, the Star claimed at oral argument that if a state governmental body appeared as a party at a settlement conference ordered by a federal district court, such a conference could not be closed without violating the Act. We reject this argument.  The Supreme Court has unequivocally stated that a "state-law prohibition against compliance with [a federal] district court's decree cannot survive

_____

[1]The Attorney General of the State of Missouri supports this construction of the Act. (Br. of Attorney Gen. at 9).  While the representations of the Attorney General are not binding on the state courts or legislature, we assume that they are authoritative within the executive branch.

the command of the Supremacy Clause." <u>Washington v. Fishing Vessel Ass'n</u>, 443 U.S. 658, 695 (1979) (citing <u>Cooper v. Aaron</u>, 358 U.S. 1 (1958)).

In this case, the district court has determined that DMC meetings with the litigants are necessary to the implementation of the desegregation remedy. Thus, rather than accepting the Star's interpretation of the Act, which would conflict with the functioning of federal governmental bodies, we believe it is abundantly clear and hold that the Act does not cover official meetings of federal governmental bodies, even where state governmental bodies appear at such meetings for the purpose of federal concerns. Therefore, the district court's decision is not clearly erroneous as a matter of law. As such, a writ of mandamus cannot be justified.

II. <u>Supervisory Power</u>

While our interpretation of the Act suggests no error in the district court's decision, there is another overarching federalism concern that must be addressed--comity. Although the district court's order does not violate the Act by ordering the Board to appear before it or the DMC in closed session, the extent to which such action imposes on the policies that underlie the Act must be considered.

9

In ascertaining the scope of the Act, we interpret Missouri law as would a Missouri state court. Erie R.R. v. Tompkins, 304 U.S. 64 (1938). State courts have held that the Act's affirmative provisions should be interpreted broadly and its exceptions narrowly. Kansas City Star v. Fulson, 859 S.W.2d 934, 939 (Mo. Ct. App. 1993). With this in mind, as well as the Act's triggering provision, which includes "all matters which relate in any way to the performance of the public governmental body's functions or the conduct of its business," Mo. Ann. Stat. § 610.010(3), we must delineate where the Act's underlying concerns are present.

Even though the Act is binding on the Board, the statute is not without limitations. If only a few members of the Board attend a closed-door meeting, the Act would not be triggered. If the Board meets in closed session, but does not discuss public business, then concerns of infringing upon the Act's objectives disappear. Thus, if Board members merely were to provide the DMC with information, receive the DMC's views, or even discuss subjects other than its public business, such as improving communication, see Fulson, 859 S.W.2d at 940 ("Matters of public business are not synonymous with matters of public interest."), no conflict with the policies of the Act would occur.[2]

---

[2]We take note that the Attorney General of Missouri supports this interpretation of the Act. (Br. of Attorney Gen. at 9.)

10

As the Board is bound by the Act, subject to these limitations, we think it is desirable as a matter of comity that the district court give careful attention to the restrictions under which the Board acts. While under the Supremacy Clause, the district court can, under appropriate circumstances, order the Board to attend closed meetings, it is a power that the court should use sparingly and with full consideration of the principles of comity.

While we acknowledge the district court's finding that closed-door meetings increase the efficiency and efficacy of implementation, these benefits must be weighed against the concerns of comity for state law. The authority of the DMC, as an arm of the court, must be strictly monitored and carefully tailored to match the requirements of its mission: implementation of the remedy. The district court's order, however, provides no limitation or guidelines for exercising the authority it granted the DMC to close its sessions. Therefore, on the basis of our supervisory powers, see In re Williamson, 786 F.2d 1336, 1337 (8th Cir. 1986), we advise the district court to tailor its order. Specifically, the district court should provide that 1) in instances in which the prohibitions of the Act might be contravened, the DMC seek a court order stating that such a closed meeting is necessary for remedy implementation; 2) in other instances, the meeting's agenda be controlled so as not to infringe on the policies regarding discussion of public business; and 3) in

11

all cases, the agenda of DMC meetings be limited to only those areas clearly within the mission of remedy implementation. Clearly, the DMC remains unhampered to call closed meeting with the Board or its members in cases which do not fall within the parameters of the Act, as set forth above.

The case is remanded to the district court for action consistent with this decision.

A true copy.


Attest:


CLERK, U. S. COURT OF APPEALS, EIGHTH CIRCUIT.

12