IN THE MISSOURI COURT OF APPEALS
 WESTERN DISTRICT
COOPER COUNTY CLERK )
SARAH HERMAN, ET AL., )
 )
 Appellants, )
 )
v. ) WD84351
 )
COOPER COUNTY COMMISSION, ET AL., ) Opinion filed: November 23, 2021
 )
 Respondents. )

 APPEAL FROM THE CIRCUIT COURT OF COOPER COUNTY, MISSOURI
 THE HONORABLE ROBERT L. KOFFMAN, JUDGE

 Division Three: Lisa White Hardwick, Presiding Judge,
 Gary D. Witt, Judge and Edward R. Ardini, Jr., Judge

 Cooper County Clerk Sarah Herman (“Clerk”) and the City of Boonville (“Boonville”)

(collectively, “Plaintiffs”) appeal from the judgment of the Circuit Court of Cooper County

granting summary judgment in favor of the Cooper County Commission (“the Commission”) in

their action against the Commission relating to the extension of taxes by Clerk on behalf of

Boonville. We affirm in part and reverse in part.
 Factual and Procedural Background

 In 1991, Boonville entered into a contract with the clerk and collector of Cooper County

to extend and collect the city’s taxes.1 The contract provided for both the clerk and the collector to

be compensated for performing these duties separate from and in addition to their statutorily

established salaries. Since 1991, several individuals have served as clerk and collector and

operated under the contract. The 1991 contract included a renewal provision stating “[t]hat the

Cooper County Clerk and County Collector will meet with a representative of the City by the 31st

of March of each year to determine provisions for renewal of said contract.” The contract continued

that “[i]f no changes are desired by either party the contract will automatically renew annually for

an additional one year term.”

 In 2017, the individual holding the position of Cooper County Clerk was disqualified from

office, and Keat Catlett was appointed to serve the remaining term. Also in 2017, Catlett and the

then-Cooper County Collector entered into discussions with Boonville regarding a new contract

between the parties relating to the extension and collection of Boonville’s taxes. A contract was

drafted between the three parties providing for the continued extension and collection of

Boonville’s taxes but at a lesser compensation rate than required under the 1991 contract.

Ultimately, that contract was never executed.

 In 2018, the parties again negotiated a new contract. The 2018 contract, entered into on

November 1, 2018, provided for the collector to be compensated for the collection of Boonville’s

taxes:

 1. The City covenants and agrees:

 (a). To compensate the Cooper County Collector for the services provided by her
 at the rate of 1.5% (one and a half percent) of the total amount of taxes collected by

1
 Boonville is a third-class city in a third-class county under Missouri statutes. Boonville does not have its own city
clerk or city collector.

 2
 the Collector for the City, together with the penalty and interest charges as
 prescribed by law, on amounts collected from taxpayers on delinquent taxes.

 3. The Collector covenants and agrees:

 (a). To use her best professional efforts to effectuate the collection of the City taxes,
 as set forth herein, by all lawful and proper means.

 (b). To maintain reasonable and appropriate accounting and depository records and
 to pay the taxes collected by her in accordance with this agreement to the City of
 Boonville.

Catlett chose not to be a party to the 2018 contract based on his view that receiving additional

compensation for extending Boonville’s taxes would be “inappropriate.” The 2018 contract did

not reference the office of county clerk or the extension of taxes. The Cooper County Commission

approved the contract between the collector and Boonville, and Catlett, as clerk, attested to the

signatures of the commissioners.

 Clerk was elected in November 2018, and took office in January 2019. She extended the

taxes for Boonville in 2019 believing that she would be compensated for the work pursuant to the

1991 contract. However, the Commission took the position that the 1991 contract was no longer

in effect and that Clerk’s statutory duties required her to extend Boonville’s taxes without

additional compensation. The Commission issued an order to the county treasurer directing that

any compensation paid by Boonville to the county for Clerk’s efforts related to the extension of

Boonville’s taxes be returned.

 Clerk filed the present action against the Commission seeking a declaration 1) that

extending Boonville’s taxes was not within her statutorily defined duties; 2) that she was

authorized to contract with Boonville to extend the city’s taxes for additional compensation; 3)

that the 1991 contract remained in effect; and 4) that she was entitled to compensation for the taxes

she extended for Boonville in 2019. Boonville intervened, and an amended petition was filed

 3
naming both Clerk and Boonville as plaintiffs. Cross-motions for summary judgment were filed

by the parties. While those motions were pending, the Commission issued an order purporting to

terminate the 1991 contract to the extent it was still in force and effect. The trial court granted

Plaintiffs leave to file a second-amended petition to include this new fact. The three counts raised

in the second-amended petition sought declarations that (Count I) Clerk does not have a ministerial

duty to extend Boonville’s taxes and performance of such work must be by contract that may

provide for the payment of additional compensation, and that (Count II) Clerk is entitled to

compensation for tax-extension services performed in 2019 and 2020 for Boonville under either

the 1991 or 2018 contract. Plaintiffs also requested a stay of the Commission’s 2020 order that

required any payments from Boonville to compensate Clerk for tax-extension services be refunded

to Boonville (Count III). A hearing was thereafter held on the cross-motions,2 and the trial court

granted summary judgment in favor of the Commission on all three counts.

 In the trial court’s judgment, it found that “there [was] a contract between the City of

Boonville and the County of Cooper as evidenced by the duly entered contract dated November 1,

2018 for the extension and collection of the city’s taxes.” The trial court further found that the

2018 contract “by its language declares the 1991 contract expired.” Upon finding that the 2018

contract was in effect and that Clerk was not a party to that contract, the trial court stated, “[o]nce

the County Commission approved the [2018] contract with the City of Boonville, the County Clerk

was obligated by § 137.290 to do the work.” Lastly, the trial court found that Clerk was not entitled

to additional remuneration for her tax-extension services because the contract did not provide such.

 Plaintiffs appeal from that judgment.

2
 No transcript of this hearing has been made part of the record on appeal.

 4
 Standard of Review

 “‘The trial court makes its decision to grant summary judgment based on the pleadings,

record submitted, and the law; therefore, this Court need not defer to the trial court’s determination

and reviews the grant of summary judgment de novo.’” Duvall v. Yungwirth, 613 S.W.3d 71, 75

(Mo. App. W.D. 2020) (quoting Green v. Fotoohighiam, 606 S.W.3d 113, 115-16 (Mo. banc 2020)

(additional quotations and citations omitted)). “Summary judgment will be upheld on appeal if:

(1) there is no genuine dispute of material fact, and (2) the movant is entitled to judgment as a

matter of law.” Mo. Consol. Health Care Plan v. BlueCross BlueShield of Mo., 985 S.W.2d 903,

907 (Mo. App. W.D. 1999) (citing ITT Commercial Fin. Corp. v. Mid-Am. Marine Supply Corp.,

854 S.W.2d 371, 377 (Mo. banc 1993)).

 Discussion

 Plaintiffs raise four points on appeal, each alleging the trial court erred in granting summary

judgment in favor of the Commission. In Point I, Plaintiffs assert that the 2018 contract did not

require Clerk to extend Boonville’s taxes and Clerk is not otherwise statutorily required to extend

those taxes under section 137.290, RSMo. In Point II, Plaintiffs allege that the 1991 contract was

still in effect when Clerk extended Boonville’s taxes in 2019 and 2020. In Point III, Plaintiffs argue

that, in the alternative, if the 1991 contract was no longer in effect, Clerk was a “required” party

to the 2018 contract and is entitled to compensation under that contract for extending Boonville’s

taxes in 2019 and 2020. Finally, in Point IV, Plaintiffs claim that Clerk is “entitled to compensation

for her tax extension services in 2019, 2020, and future years, in that [Clerk] had no statutory duty

to extend the taxes and extended those taxes pursuant to the 1991 contract.” Plaintiffs’ points are

substantially interrelated; therefore, we will address them together.

 5
 Statutory Duty to Extend Taxes

 Plaintiffs first argue that Clerk has no statutory duty to extend Boonville’s taxes, asserting

that performance of those tax extension services could only be obligated by contract between

Boonville and Clerk.

 A county clerk’s statutory duties regarding the extension of taxes are established by section

137.290, RSMo,3 which states, in relevant part:

 The clerk of the county commission in each county, upon receipt of the certificates
 of the rates levied by the county commission, school districts and other political
 subdivisions authorized by law to make levies or required by law to certify levies
 to the county commission or clerk of the county commission, shall then extend the
 taxes in the assessor’s book, in proper columns prepared for the extensions,
 according to the rates levied.

Plaintiffs contend that, under section 137.290, RSMo, the county clerk is only required to “extend

the taxes in the assessor’s book” for those political subdivisions that are 1) authorized by law to

make levies to the county commission or clerk or 2) required by law to certify their levies to the

county commission or clerk. While Boonville is a political subdivision authorized by law to make

levies, Plaintiffs emphasize that Boonville is not a political subdivision authorized by law to “make

levies . . . to the county commission or clerk of the county commission[.]” (emphasis added).

Plaintiffs additionally argue that Boonville is not required by law to certify its tax levies to Cooper

County, rendering the latter part of the provision equally inapplicable.

 The Commission, on the other hand, argues that the statute requires the Clerk to extend

Boonville’s taxes because Boonville is “authorized by law to make levies” and that the phrase, “to

the county commission or clerk of the county commission,” only modifies the later language

relating to those taxing entities “required by law to certify levies.” Thus, the Commission argues

that section 137.290, RSMo, imposes a duty on Clerk to extend the taxes of any political

3
 Statutory citations are to the Missouri Revised Statutes (2019).

 6
subdivision “authorized by law to make levies[;]” a duty activated “upon receipt of the certificates

of the rates levied” from the political subdivision. The Commission additionally contends that

Boonville is mandated to certify its tax levies to the County Commission or Clerk under section

137.073.6(2), RSMo, thereby satisfying the second prong of section 137.290, RSMo, as well.

 “When engaging in statutory interpretation, we are required ‘to determine the intent of the

legislature from the words used in the statute and give effect to that intent,’ while keeping in mind

that the language used should be given its plain and ordinary meaning.” Boone Cnty. v. Cnty.

Emps’ Ret. Fund, 26 S.W.3d 257, 261 (Mo. App. W.D. 2000) (quoting Mo. Comm’n on Human

Rights v. Red Dragon Rest., Inc., 991 S.W.2d 161, 166 (Mo. App. W.D. 1999)). If the statutory

language is unambiguous, we “‘must give effect to the statute as it is written.’” Id. (quoting Kan.

City Star Co. v. Fulson, 859 S.W.2d 934, 938 (Mo. App. W.D. 1993)). “‘Courts, however, look

beyond the plain and ordinary meaning of the statute when its meaning is ambiguous or will lead

to an illogical result which defeats the intent of the legislature.” Id. (quoting Fulson, 859 S.W.2d

at 938).

 We first address that part of section 137.290, RSMo, relating to school districts and

political subdivisions “authorized by law to make levies[.]” As an initial matter, we must determine

whether this part of the statute stands in isolation or is modified by “to the county commission or

clerk of the county commission,” which appears later in the sentence. The Commission notes that

“authorized by law to make levies” is immediately followed by the disjunctive “or” and argues

that this limits application of “to the county commission or clerk of the county commission” to

that part of the statute immediately before it relating to entities that certify their tax levies to the

county.

 7
 “Under the last antecedent rule, relative and qualitative words are to be applied only to the

words or phrases preceding them.” Spradling v. SSM Health Care St. Louis, 313 S.W.3d 683, 688

(Mo. banc 2010) (citation omitted). “The relative and qualitative words ‘are not to be construed as

extending to or including others more remote.’” Id. (quoting Norberg v. Montgomery, 173 S.W.2d

387, 390 (Mo. banc 1943)). However, such rule “is not always mandatory in statutory

interpretation.” Id. (citation omitted). “‘Where several words are followed by a clause as much

applicable to the first and other words as to the last, the clause should be read as applicable to all.’”

Id. (quoting Norberg, 173 S.W.2d at 390).

 The Commission argues that Clerk has a ministerial duty to extend taxes for any political

subdivision “authorized by law to make levies” and that such duty is triggered “upon [the county’s]

receipt of the certificates of the rates levied[.]” Boonville, as a third-class city, is a political

subdivision, see Guy v. City of St. Louis, 829 S.W.2d 66, 68-69 (Mo. App. E.D. 1992) (discussing

the various definitions of “political subdivision,” which generally include cities, towns, villages,

and townships), and is authorized by chapter 94, RSMo, to levy property taxes. See e.g., § 94.015

(procedure for levying taxes); § 94.020 (power of city council to levy taxes); § 94.060 (maximum

tax rate allowed to be levied by ordinance). Thus, under the interpretation urged by the

Commission, Boonville, and any other political subdivision authorized to levy taxes, would be

vested with the unilateral ability to obligate a county clerk to extend (and county collector to

collect4) its taxes without the consent of the county and in the absence of an agreement with the

county or any affected county officeholder.

4
 Once taxes are extended in the assessor’s book, the collector is statutorily required to bill the political subdivision’s
taxpayers. §52.230.1, RSMo (collector “shall mail to all resident taxpayers, at least thirty days prior to delinquent
date, a statement of all real and tangible personal property taxes due and assessed on the current books in the name of
the taxpayers.”).

 8
 Our review of other statutory provisions reveals that when the general assembly has desired

to impose a ministerial duty on county officials to extend and collect taxes on behalf of political

subdivisions, it has done so with a clarity of purpose and specificity. This point is illustrated by

examining statutes applicable to political subdivisions other than municipalities. For instance, the

board of a fire protection district is directed to

 certify to the county commission of each county within which the district is located
 a rate of levy so fixed by the board as provided by law, with directions that at the
 time and in the manner required by law for the levy of taxes for county purposes
 such county commissions shall levy a tax at the rate so fixed and determined upon
 the assessed valuation of all the taxable tangible property within the district, in
 addition to such other taxes as may be levied by such county commissions.

§321.250, RSMo. Similar statutory provisions directing counties to handle tax collection duties

exist for other political subdivisions, see e.g. § 247.470, RSMo5 (applicable to metropolitan water

supply districts), as well as for school districts, see § 164.041, RSMo. See also State ex rel. Sch.

Dist. No. 15, Pleasant Valley, Jackson Cnty. v. Conley, 470 S.W. 2d 170 (Mo. App. W.D. 1971)

(ministerial duty imposed on county clerk to extend taxes for school district based on section

164.041, RSMo). In each instance, the county extends and collects the tax for a taxing authority—

be it a political subdivision or school district—not based simply on the fact that the taxing authority

is “authorized to make levies[,]” but because the taxing authority is “authorized by law” to

communicate its tax levy information to the county and the county is directed to engage in the

process of collecting it.

 Based on the foregoing, we conclude that the term “to the county commission or clerk of

the county commission” applies to and modifies the phrase “authorized by law to make levies.”

5
 Metropolitan water supply district boards “shall certify to the county commission of the county within which the
district is located a rate of levy so fixed by the board as provided by law, with directions that at the time and in the
manner required by law for levy of taxes for county purposes such county commission shall levy a tax at the rate so
fixed . ..” § 247.470.1, RSMo.

 9
Thus, there must exist some statutory authorization bestowed on the taxing authority to refer its

tax levy to the county to trigger section 137.290, RSMo. Notably, the existence of a ministerial

duty born of statute imposed on a county clerk to extend taxes on behalf of a municipality does

not exist. This, in part, may be owing to the fact that municipalities, unlike other political

subdivisions, have the authority under chapter 94, RSMo, to extend and collect their own taxes.

This unique status provides a sensible rationale for the general assembly to have created a scheme

that treats municipalities differently than other political subdivisions and explains why section

50.332, RSMo, provides only municipalities with the authority to contract with county officers “to

perform the same type of duties for such municipality as such county officer is performing for the

county.” In fact, it was this power to contract (and not some statutory duty) that provided the legal

mechanism through which the Cooper County Clerk and Collector extended and collected

Boonville’s taxes for nearly three decades.6

 We next address that portion of section 137.290, RSMo, that mandates a county clerk to

extend taxes for political subdivisions that are “required by law to certify levies to the county

commission or clerk of the county commission.” The Commission asserts this requirement is

satisfied based on section 137.073.6(2), RSMo, arguing that the provision obligates Boonville to

certify its levies to the Commission or Clerk. We disagree. Section 137.073.6, RSMo, establishes

a process through which tax rates proposed by taxing authorities are reviewed for compliance with

6
 While the trial court found Clerk had a statutory duty based on the “other political subdivisions authorized by law to
make levies” prong of section 137.290, RSMo, it reached this result by relying on the 2018 contract. The trial court
specifically found that the aforementioned statutory duty to extend taxes was triggered “once the county has entered
into a contract for collection of those taxes.” This Court can find no support for the trial court’s determination that a
contract between a different county officeholder and a political subdivision can operate to impose a “statutory duty”
on Clerk under section 137.290, RSMo—a statutory provision that neither references contracts nor provides that a
contract triggers the “statutory” duty. Rather, a contract of the type contemplated by section 50.332, RSMo, creates
contractual obligations. As explained infra, we find that the 1991 contract expired and Clerk was not a party to the
2018 contract.

 10
the Hancock Amendment. The Commission’s extensive efforts in its briefing to morph what it

characterizes as an “interactive certification and compliance process” into something sufficient to

impose a ministerial duty on Clerk to extend Boonville’s taxes fails for a simple reason – under

section 137.073.6(2), RSMo, taxing authorities do not “certify” the data they supply to the county

clerk or county commission as would be required to satisfy the relevant language of section

137.290, RSMo. Section 137.073.6(2), RSMo states, in relevant part, that “[e]ach taxing authority

proposing to levy a tax rate in any year shall notify the clerk of the county commission in the

county or counties where the tax rate applies of its tax rate ceiling and its proposed tax rate.” Thus,

while section 137.073.6, RSMo, might require Boonville to “notify” Clerk of “its tax rate ceiling

and its proposed tax rate[,]” this notification plainly does not constitute a legal requirement that

Boonville “certify” its levy to Clerk or any other county official.

 Based on the foregoing, we find that a county clerk has no statutory duty to extend the

taxes of a municipality under section 137.290, RSMo.

 Additional Compensation for Extending Taxes

 In the absence of a statutory duty to extend Boonville’s taxes, Plaintiffs argue that Clerk is

entitled to compensation for performance of those duties under the terms of the 1991 contract or,

in the alternative, the 2018 contract. As previously explained, under section 50.332, RSMo, clerks

and other county officers “may, subject to the approval of the governing body of the county,

contract with the governing body of any municipality located within such county, either in whole

or in part, to perform the same type of duties for such municipality as such county officer is

performing for the county.” Although the statute does not appear to require that such an agreement

include the payment of compensation for the contracted services, to the extent the contract does

provide for compensation, it is to “be paid directly to the county, or county officer, or both, as

 11
provided in the provisions of the contract, and any compensation allowed any county officer under

any such contract may be retained by such officer in addition to all other compensation provided

by law.” § 50.332, RSMo. Similarly, section 70.220, RSMo permits a municipality to contract with

an elected county official:

 1. Any municipality . . . may contract and cooperate with any other municipality or
 political subdivision, or with an elective or appointive official thereof, . . . for a
 common service; provided, that the subject and purpose of any such contract or
 cooperative action made and entered into by such municipality or political
 subdivision shall be within the scope of the powers of such municipality or political
 subdivision.

Under these provisions, Clerk would be entitled to compensation beyond her statutory salary for

extending the taxes of a municipality—such as Boonville—if there exists a valid contract,

approved by the county commission, so stating. Plaintiffs argue that Clerk is entitled to be

compensated under either the 1991 contract (Points II and IV) or the 2018 contract between the

Cooper County Collector and Boonville (Point III).

 “‘The cardinal rule of contract interpretation is to ascertain the parties’ intention and to

give effect to that intention.’” Newco Atlas, Inc. v. Park Range Const., Inc., 272 S.W.3d 886, 891

(Mo. App. W.D. 2008) (quoting Sonoma Mgmt. Co., Inc. v. Boessen, 70 S.W.3d 475, 479 (Mo.

App. W.D. 2002)). “‘To do that, this court is to rely on the plain and ordinary meaning of the

words in the contract and consider the document as a whole.’” Platte Cnty. v. UMB Bank, N.A.,

Tr. of Transp., Refunding & Improvement Bonds (Zona Rosa Retail Project) Series, 2007, 611

S.W.3d 819, 927 (Mo. App. W.D. 2020 (quoting Nodaway Valley Bank v. E.L. Crawford Const.,

Inc., 126 S.W.3d 820, 825 (Mo. App. W.D. 2004) (additional quotation and citation omitted)).

“Where the language of the contract is unambiguous, the intent of the parties will be ascertained

from the language of the contract alone and not from extrinsic or parol evidence of intent.” Newco

Atlas, Inc., 272 S.W.3d at 891 (citing Sonoma Mgmt. Co., 70 S.W.3d at 479). “‘A contract is

 12
ambiguous only if its terms are reasonably open to more than one meaning, or the meaning of the

language used is uncertain.’” Id. (quoting Atlas Reserve Temps. v. Vanliner Ins. Co., 51 S.W.3d

83, 87 (Mo. App. W.D. 2001)). “A contract is not rendered ambiguous simply because the parties

disagree as to its construction.” Id. (citing Atlas Reserve Temps., 51 S.W.3d at 87). “Furthermore,

in interpreting a contract, a court may not create an ambiguity through the use of extrinsic or parol

evidence.” Id. (quoting City of St. Joseph v. Lake Contrary Sewer Dist., 251 S.W.3d 362, 368 (Mo.

App. W.D. 2008) (additional quotation and citation omitted)).

 We first address Plaintiffs claim that the 1991 contract was in effect when Clerk extended

Boonville’s 2019 and 2020 taxes. In support, Plaintiffs argue that the 2018 contract only applied

to the collector, leaving the 1991 contract in effect as between Clerk and Boonville. We disagree.

 The 1991 contract provided compensation be paid to both the Cooper County Clerk and

Collector for the extension and collection of Boonville’s taxes. The 1991 contract included a

provision that allowed for the contract to renew “[i]f no changes are desired by either party[.]”

This language unambiguously provided that if a party to the 1991 contract desired changes to the

contractual relationship, the contract would not renew. The summary judgment record makes clear

that the 2018 contract was the result of changes desired by the parties to the 1991 contract; and,

therefore, the 1991 contract, by its terms, was not renewed and expired on March 31, 2019.7 Thus,

there can be no claim by Clerk for compensation under the 1991 contract after its expiration.

 Clerk additionally cannot rely on the 2018 contract to claim additional compensation for

extending taxes for Boonville. As discussed above, additional compensation payable to a county

clerk for extending taxes for a political subdivision under circumstances not statutorily required is

7
 Arguably, the non-renewal provision was triggered in 2017, when the parties negotiated but failed to enter into the
2017 contract.

 13
permitted only by contract entered into pursuant to section 50.332, RSMo. In the absence of such

an agreement, there exists no basis for Clerk to receive the additional compensation. Clerk is not

a party to the 2018 contract,8 the contract does not reference or otherwise address the extension of

taxes, and, most significantly, the 2018 contract does not provide for Clerk to receive any

compensation. Therefore, Clerk is not entitled to additional compensation for the extension of

Boonville’s taxes under the 2018 contract.

 Point I is granted. Points II, III, and IV are denied.

 Conclusion

 The judgment of the trial court is affirmed in part, and reversed in part. The trial court’s

grant of summary judgment in favor of the Commission on Counts II and III9 is affirmed. The

grant of summary judgment in favor of the Commission on Count I is reversed and judgment is

entered in favor of Plaintiffs on its cross-motion for summary judgment pursuant to our authority

under Rule 84.14.

 __________________________________________
 EDWARD R. ARDINI, JR., JUDGE

All concur

8
 Plaintiffs also argue that Clerk was a “required” party to the 2018 contract because the collector cannot collect taxes
if they are not first extended in the assessor’s books by Clerk. Plaintiffs’ argument ignores that the 2018 contract does
not provide for additional compensation to Clerk, and we cannot read such compensation into the plain language of
the contract. See e.g., Giessow Rests, Inc. v. Richmond Rests, Inc., 232 S.W.3d 576, 579 (Mo. App. E.D. 2007) (citation
omitted) (“It is well-established that when parties reduce their agreements to writing we presume that the instrument
contains the entire contract, and we will not imply additional provisions unless necessary to effectuate the parties clear
intentions.”).
9
 In Count III, Clerk sought to stay the Commission’s 2020 order directing the Cooper County Treasurer to refund
payments made by Boonville to Cooper County to compensate Clerk for tax extension services. Because we find that
Clerk is not entitled to additional compensation for those services under either the 1991 contract or 2018 contract, we
affirm the trial court’s grant of summary judgment in favor of the Commission on Count III.

 14