presented at trial established the railroad's negligence.

The judgment is affirmed. Rule 84.16(b).

■

**Marvin DANIELS, Appellant,**

v.

**·KANSAS CITY SOUTHERN RAILWAY CO., Respondent.**

**No. WD 51609.**

Missouri Court of Appeals,
Western District.

Oct. 22, 1996.

Motion for Rehearing and/or Transfer to
Supreme Court Denied Nov. 26, 1996.

Application to Transfer Denied
Jan. 21, 1997.

■

**Kathleen COLOMBO, et al., Appellants,**

**Willie J. Hutson, Plaintiff,**

**Missouri Press Association,
Amicus Curiae,**

v.

**Michael BUFORD, et al., Respondents.**

**No. WD 51723.**

Missouri Court of Appeals,
Western District.

Oct. 22, 1996.

Motion for Rehearing and/or Transfer to
Supreme Court Denied Nov. 26, 1996.

Application to Transfer Denied
Jan. 21, 1997.

Before ULRICH, C.J., P.J., and
BRECKENRIDGE and SPINDEN, JJ.

### ORDER

Theresa Shean Hall, Kansas City, for Appellants.

Allan V. Hallquist, Kansas City, for Respondents.

Before EDWIN H. SMITH, P.J., and BRECKENRIDGE and ELLIS, JJ.

EDWIN H. SMITH, Judge.

This is an appeal from an order in a judge-tried case sustaining respondents' "motion for directed verdict" at the close of appellants' evidence on appellants' petition alleging violations of the Sunshine Law, §§ 610.010—610.026.[1] Appellants raise four points on appeal; three points dealing with the granting of respondents' motion for directed verdict at the close of appellants' evidence, and one point concerning a denial of appellants' motion to amend their pleadings.

Before we begin our discussion of this case, we feel compelled to admonish counsel for respondents. Rule 84.04(f) requires the respondent's brief to either adopt the appellant's statement of facts or concisely correct any misstatements. The purpose of this rule is to assist the court in determining what factual issues are really in dispute. The respondents' Brief in this case contained a twenty-five page Statement of Facts giving a complete recount of the events which transpired. Ignoring Rule 84.04(f) seems to be in fashion, but we now take the opportunity to put all counsel for respondents on notice that compliance with this rule is required. Proper compliance with the rules on briefing works to the advantage of the parties and the speed with which the wheels of justice can spin.

## FACTS

Appellants Kathleen Colombo and Sharon Kinton are former members of the Center School District Board of Education. Appellant Dr. John Strosnider is a current member of the Center School Board. Appellant Jan Raccuglia is a resident of the Center School District. Respondents, Michael Buford, Mary Ellen Young, Norman Caron, Alan Stempleman, Eugene Banaka and Charles Holton are current members of the Center School Board. Respondents Banaka and Holton were elected to succeed appellants Colombo and Kinton who did not run for another term on the board. Banaka and Holton were not on the board when the alleged violations occurred.

Appellants filed suit against respondents alleging numerous violations of Missouri's Sunshine Law. At the time, there existed a 4–3 ideological split in the school board, with the appellants being the minority group and the respondents being the majority group. The rough details of each of the alleged violations which are the subject of this appeal are set forth *infra.*

### A. Polling of Board Regarding Mailing

At the July 18, 1994, board meeting, the board voted to send a packet of materials to middle school parents using registered mail "where the board was assured that parents would not have to go to the post office to retrieve such mail." When it was discovered that registered mail could involve parents having to pick up the materials at the post office, board president Buford directed the board secretary to poll the board members

1. All statutory references are to RSMo 1994, unless otherwise indicated.

by phone to determine how to send the mailing. After polling the members, it was decided that registered mail would be used.

### B. Gathering at the Home of Patron

On May 20, 1995, six defendant board members met at the home of a school district patron, Steve Oesch, along with other patrons, for a social gathering. At the gathering, the board members discussed general educational philosophy and the formation of a small support group of parents.

### C. Release of Superintendent

On February 21, 1995, respondent Buford, met over lunch with Dr. Feltner, the superintendent, to warn him of his impending release from his duties. At this meeting, Buford commented that Feltner did not have the necessary votes on the school board to continue, though no vote had yet been taken. The next day, a board meeting was scheduled and the respondents voted to relieve Dr. Feltner of his duties. At the meeting, Buford presented a prepared letter advising Dr. Feltner of his dismissal. Appellants allege that respondents met prior to the board meeting to discuss a motion to not extend the contract of Dr. Feltner.

### D. Trip to Belton High School

On November 28, 1994, respondents Buford, Young, and Caron traveled to Belton High School to meet with the principal there to discuss block scheduling at that school for possible implementation in the Center School District. That night at a board meeting, the three voted against block scheduling without comment. Two days later, three of the respondents met with the high school staff without notice to the public to explain their reasons for voting against the block schedule.

The primary thrust of all of the alleged violations is that the respondents met with each other in groups of two or three and discussed school board matters prior to the meetings of the entire school board. Appellants further charge that through these closed meetings, respondents were permitted to solidify votes and ensure they had a majority before introducing motions in an open school board meeting; i.e., that portions of the meeting were "scripted."

### I. and II.

In Point I, appellants assert that the trial court erred in requiring them to demonstrate a "violation" of the Sunshine Law in order to prevail on respondents' motion for directed verdict at trial. Appellants claim that the trial court erroneously declared or applied § 610.027.2 in that, in order to shift the burden of persuasion to respondents, this statute only required appellants to demonstrate that respondents held a closed meeting, record or vote, not that they violated the Sunshine Law. The claim in Point II is essentially the same as in Point I. In Point II, appellants assert that it was error for the trial to sustain respondents' motion for directed verdict in that they had met their burden of persuasion by substantial and uncontroverted evidence and that the burden of persuasion should have been shifted by the trial court to respondents to show no violation of the Sunshine Law. Because these two points interdepend, one logically cannot be decided without deciding the other.

▇ Neither party requested findings of fact or conclusions of law. However, the trial court gratuitously made certain oral findings of fact and conclusions of law on the record. Such gratuitous findings may be considered in determining whether the trial court erroneously applied or declared the law. *In Interest of L.W.F.*, 818 S.W.2d 727, 733 (Mo.App.1991); *Graves v. Stewart*, 642 S.W.2d 649, 651 (Mo. banc 1982). Therefore, we will review these findings and conclusions along with the rest of the record to determine whether the trial court erroneously applied or declared the law and in doing so reached an incorrect result.

### Standard of Review

Initially, we must address appellants' claim that our review should be one to determine whether they made a submissible case so as to survive respondents' motion for directed verdict. In making that determination we must be guided by § 610.027.2. Section 610.027.2 provides in pertinent part:

Once a party seeking judicial enforcement of §§ 610.010 to 610.026 demonstrates to the court that the body in question is subject to the requirements of §§ 610.010 to 610.026 and has held a closed meeting, record, or vote, the burden of persuasion shall be on the body and its members to demonstrate compliance with the requirements of §§ 610.010 to 610.026.

Under this statute, the plaintiffs bear the burden of persuasion until they are able to meet two requirements: 1) the body represented by the defendants is subject to the Sunshine Law; and 2) the body has held a closed meeting, record, or vote. *Id.; Kansas City Star Co. v. Fulson,* 859 S.W.2d 934, 942 (Mo.App.1993). Respondents admit that the Center School board is a public governmental body subject to the Sunshine Law. Thus, before the burden of persuasion should have been shifted to respondents at trial, appellants were required to show that a closed meeting of the Center School Board took place. The issue then for us to decide is whether the appellants met their burden of persuasion under the statute and should have survived respondents' motion for directed verdict.

■■■■ On this issue, appellants contend that our review is one for a submissible case. We disagree. In a judge-tried case, where a party against whom a motion for directed verdict has the burden of persuasion, the motion is treated as a motion to dismiss and submits on the merits the issues on which appellants have the burden of persuasion, requiring the trial court to determine credibility of the witnesses and to weigh the evidence, so that the appeal from the ruling on the motion is from a final determination of the issues in question and is governed by *Murphy v. Carron,* 536 S.W.2d 30 (Mo. banc 1976). *City of Hamilton v. Public Water Supply Dist. # 2,* 849 S.W.2d 96 (Mo.App. 1993); *Pasta House Co. v. Williams,* 833 S.W.2d 460, 461 (Mo.App.1992); *Wyrozynski v. Nichols,* 752 S.W.2d 433 (Mo.App.1988). Thus, we will affirm the trial court's grant of respondents' motion for directed verdict at the close of appellants' evidence, unless there is no substantial evidence to support it, it is against the weight of the evidence, or it erroneously declares or applies the law.

*Murphy,* 536 S.W.2d at 32. The evidence and reasonable inferences therefrom are to be viewed in the light most favorable to the judgment with all contrary evidence to be disregarded. *Kansas City Star Co.,* 859 S.W.2d at 938. We give due regard to the trial court's determination as to the credibility of a witness. *Central States Christian Endeavors Ass'n v. Nelson,* 898 S.W.2d 547, 548 (Mo. banc 1995). When sitting as the trier of fact, the trial court may believe all, part or none of the testimony of any witness. *Trenton Trust Co. v. Western Sur. Co.,* 599 S.W.2d 481, 483 (Mo. banc 1980). Any conflict in the evidence is for the trial court to resolve and we review the facts in accordance with the result reached. *Id.* "If a motion for directed verdict is properly ruled, we will affirm the directed verdict regardless of the reasons behind the trial judge's decision." *Commerce Bank of St. Louis, N.A. v. Findley,* 874 S.W.2d 409, 411 (Mo.App.1994); *see also Guier v. Guier,* 918 S.W.2d 940, 946 (Mo.App.1996).

### Discussion

The difference between demonstrating a violation of the Sunshine Law and demonstrating that a closed meeting took place is not a semantical difference. The risk of nonpersuasion that the closed meeting constituted a violation of the Sunshine Law was statutorily placed on respondents. Thus, the trial court would be guilty of error if it found against appellants on respondents' motion for directed verdict because it was not persuaded that a violation of the Sunshine Law had been shown by appellants, when, in fact, the burden of nonpersuasion on this issue should have been placed on respondents. However, before finding reversible error on this basis we would have to determine whether, in spite of an erroneous application or declaration of the law, the trial court reached an incorrect result in sustaining respondents' motion. *Commerce Bank of St. Louis, N.A.,* 874 S.W.2d at 411. We also recognize the possibility that the trial court, in using the term "violation" in its remarks was not referring to a violation as the term is used in § 610.027.2, but was actually referring to a failure by appellants to show a closed meet-

ing occurred, in which case the trial court was not erroneously requiring appellants to show a violation of § 610.027.2 in order to prevail on respondents' motion. In any event, if from the record we determine the trial court was correct in sustaining respondents' motion, it matters not whether the trial court was using the term "violation" in the correct statutory sense.

In Point II, appellants address in four subpoints the four violations on which they now appeal.[2] We will address them in the order they are presented in appellants' brief.

### A. Polling of Board Regarding Mailing

■ Before addressing the merits of this alleged violation, we must first address respondents' claim that it is barred by the applicable statute of limitations. Respondents raised this affirmative defense in their answer to appellants' amended petition as required by Rule 55.08. If the claimed violation is barred, then we need not address the merits of this claim.

Section 610.027.4 provides in pertinent part that "[s]uit for enforcement [of a violation of the Sunshine Law] must be brought within six months from which the violation is **ascertainable** and in no event shall it be brought later than one year after the violation." (emphasis added). Thus, we must determine when the violation was ascertainable.

■ There are no cases which interpret ascertainability of a Sunshine Law violation in the context of § 610.027.4. However, our Supreme Court has held that in determining when damages are "ascertainable" for purposes of when the applicable statute of limitations commences is when the fact of damage can be discovered or made known, rather than when a plaintiff actually discovers the injury or wrongful conduct; thus, ascertainability is an objective determination. *Sheehan v. Sheehan,* 901 S.W.2d 57, 58–59 (Mo. banc 1995). The violation of the Sunshine Law and the damage created thereby are one in the same—a closed meeting of a public gov-

ernmental body excluding the oversight by and input of the public. In other words, when the violation is ascertainable, so is the damage. Thus, we find the objective standard of ascertainability applied by our Supreme Court in *Sheehan* should be applied here. The question then becomes when could have the alleged violation been discovered or when was it made known.

As recited in respondents' brief:

Board secretary Capehart made her calls to the board members between the July 18, 1994, and the August 22, 1994, meetings of the Center Board of Education. TR. at 146. The facts regarding her phone calls to the board members were ascertainable on or before the next board meeting on August 22, 1994. For example, plaintiff Strosnider spoke directly with board secretary Capehart regarding this matter. TR. at 194–95. Plaintiff Kinton learned of the phone calls prior to the August 22, 1994, meeting, contacted defendant Buford, and told him she thought he had broken the law by suggesting that the calls be made. TR. at 126–27. Plaintiff Colombo testified at trial that she stated at the August 1994 board meeting that the phone calls regarding the middle school mailing were illegal. TR. at 49.

*Resp. Br.* at 47–48. From this, we find that the violation alleged by appellants was ascertainable by any member of the public, including all the appellants, as of August 22, 1994. Thus, appellants' claim on this violation was required to be filed on or before Wednesday, February 22, 1995. *See Putnam v. Stix, Baer & Fuller,* 795 S.W.2d 620 (Mo.App. 1990) (computing time under Rule 44.01(a) for statute of limitations). It was not. It was filed on Thursday, February 23, 1995, and therefore, barred by the six-month statute of limitations.

In their reply brief, appellants argue that because they sought injunctive relief pursuant to § 610.030, that the six-month statute of limitations found in § 610.027 did not bar

---

2. Sub-point D deals with a violation concerning the trip by three board members to Belton High School. In their Point III, appellants claim the trial court erred in denying their motion to amend their petition to include this violation.

Although the trial court denied the motion, it nonetheless ruled this violation on the merits. Because of the ruling on the merits by the trial court, we choose to review this violation.

their claim for injunctive relief because the six-month bar is limited to suits for enforcement of §§ 610.010 to 610.026 only. In making this argument, appellants neglect to recognize that § 610.030 is limited to enforcement of the "provisions of §§ 610.100 to 610.115." [3] These sections pertain to arrest records only and do not include the violation alleged by appellants here. This argument of appellants simply has no merit.

Although the trial court sustained respondents' motion for a directed verdict on another basis, because this alleged violation is time barred and this defense was properly raised by respondents in their pleadings, the correct result was reached, and we will not reverse. *Commerce Bank of St. Louis, N.A.*, 874 S.W.2d at 411.

### B. Gathering at the Home of Patron

█ Appellants next claim that the gathering on May 20, 1995, at the home of a school district patron, Steve Oesch, constituted a closed meeting in violation of the Sunshine Law. The trial court found that this activity was not a "public meeting" subject to the Sunshine Law because it was an informal gathering for social purposes only. Section 610.010(5) defines "public meeting" and specifically excludes informal gatherings for social purposes from its definition when there is no intent to avoid the purposes of the Sunshine Law. As this court found in *Kansas City Star Co. v. Fulson*, the "[l]egislature provides an absolute exclusion for informal social gatherings where there is no intent to circumvent the purposes of Chapter 610, ..." without regard for whether public business was actually discussed. *Kansas City Star Co.*, 859 S.W.2d at 939—40 (Mo.App. 1993). The question then is whether the trial court was correct in finding that this was an informal gathering for social purposes.

This court in *Kansas City Star Co. v. Fulson* addressed the issue of what constitutes an informal gathering for social purposes under § 610.010(5). There we recognized that since the terms "informal" or "social" are not defined in the statute that the plain and ordinary meaning of the words and phrases must be used to ascer-

tain the intent of the legislature. *Id.* at 939.

The plain and ordinary meaning is usually derived from the dictionary. A "social" gathering by nature is one where persons gather in pleasant companionship with friends and associates. The plain and ordinary meaning of "informal" as derived from the dictionary is "not formal; conducted or carried out without formal, regularly prescribed or ceremonious procedure; unofficial." The definition of "unofficial" is "not belonging to, emanating from, or sanctioned or acknowledged by a governing body" (citations omitted). *Id.*

The record would reflect that the school district patron invited the respondents and some of their friends to a gathering at his home "to get together in a casual, social setting, to get away from those other kinds of things and just enjoy each other for a change." Respondents were present with other people from the community. The gathering was totally unstructured. There was no agenda, no one gaveled the occasion to order, people did not take turns talking to the entire group of guests, and none of the other trappings of an official meeting were present. There were discussions regarding "general educational philosophy", but no vote was taken or any policy established. There was testimony that the board members frequently have contact with persons who express their opinion about school policies to them, so that this evening was not unusual.

Limiting our review to appellants' evidence alone would support the trial court's finding that the gathering of May 20, 1995, at Mr. Oesch's home was an informal gathering for social purposes, and that there was no intent to avoid the purposes of the Sunshine Law. Thus, we find the trial court correctly determined pursuant to § 610.010(5) that the gathering was not a "public meeting" subject to the Sunshine Law and reached the correct result in sustaining respondents' motion for directed verdict. As to this violation, it matters not whether the trial court was confused as to the application of § 610.027.2 and

---

**3.** The 1982 amendment deleted ... "610.010 to      610.030 and ..." following "sections".

whether the burden of persuasion should have shifted to respondents as argued by appellants. Regardless of who had the burden of persuasion, under the facts of this case, the result would have been the same.

## C. Release of Superintendent

█ Appellants claim that a "closed meeting" occurred prior to the February 22, 1995, board meeting addressing Dr. Feltner's release as superintendent, as evidenced by Buford's statement to Dr. Feltner that he had the votes to have Dr. Feltner terminated. Appellants do not claim that there was a meeting where respondents were physically present at one time in one location. Their assertion is that respondents Buford, Young, Caron and Stempleman in a series of individual discussions, deliberated and decided prior to the February 22 meeting how and when to relieve Dr. Feltner of his duties and that the February 22 meeting was a "mere formality to ratify the respondents' actions." In support of their claim, appellants cite us to *Palm Beach v. Gradison*, 296 So.2d 473 (Fla.1974), *First Bank & Trust Co. of Boca Raton v. Town of Palm Beach*, 311 So.2d 113 (Fla. 1975), 423 U.S. 868, 96 S.Ct. 131, 46 L.Ed.2d 98 (1975) in which the court condemned, under Florida's open meetings law, personal and private discussions between individual members of a public governmental body where issues of public business are discussed and decided in private, rendering a subsequent public meeting, discussion and vote a "ceremonial sham". Respondents counter with their argument that a meeting of members of a governmental body constituting less than a "quorum", is not a meeting of the body subject to the Sunshine Law. In support of their argument, they cite *Hispanic Educ. Comm. v. Houston Indep. Sch. Dist.*, 886 F.Supp. 606 (S.D.Tex.), aff'd., 68 F.3d 467 (5th Cir.1995), which held that private meetings of less than a quorum with no attempt to take action are not meetings of the board under Texas' opening meetings law. The appellate courts of this state have not directly confronted this issue. The question then becomes what constitutes under our Sunshine Law a meeting of a public governmental *body* that will trigger Sunshine Law protection.

A "public governmental body" under our Sunshine Law is statutorily defined as "any legislative, administrative governmental *entity* created by the constitution or statutes of this state, by order or ordinance of any political subdivision or district, judicial *entities* when operating in an administrative capacity, or by executive order ..." § 610.010(4) (emphasis added). This definition "qualifies" a "public governmental body", but does not "quantify" it. Thus, to answer the question raised here, we are required to interpret our Sunshine Law to ascertain the intent of the legislature. *Woolridge v. Woolridge*, 915 S.W.2d 372, 378 (Mo.App.1996). "The primary rule of statutory construction requires [us] to ascertain the intent of the legislature by considering the plain and ordinary meaning of the words used in the statute." *Jones v. Director of Revenue*, 832 S.W.2d 516, 517 (Mo. banc 1992). Once we determine the intent, we are to give effect to it, if possible. *Wolff Shoe Co. v. Director of Revenue*, 762 S.W.2d 29, 31 (Mo. banc 1988).

In our Sunshine Law, "public governmental body" or "body" is used consistently when delineating what meetings are required to remain open. *See* §§ 610.020, 610.021. In defining "public governmental body", the legislature uses the term "entity", indicating an intent to prescribe the actions of the formal group or body, rather than the actions of individual members acting independently and without any authority from the body. Further evidence of this intent can be found in the language of § 610.010(4)(e), further defining "public governmental body":

> Any committee appointed by or at the direction of any of the entities and which is authorized to report to any of the above named entities, or any policy advisory body, policy advisory committee or policy advisory group appointed by a president, chancellor or any other executive officer of any college or university system or individual institution at the direction of the governing body of said institution which is supported in whole or in part with state funds; ...;

and in the language of *§ 610.020.4:* "[a] formally constituted subunit of a parent govern-

mental body may conduct a meeting without notice . . .". The legislature in these instances speaks in terms of subunits of the entity, not individual members. No mention is made of individual members of the body coming within the definition of subunits.

Further, in § 610.027.2, which deals with violations and enforcement of the Sunshine Law, the legislature refers to "the body **and** its members", when shifting the burden of persuasion to them upon a proper showing by the plaintiff to demonstrate no violation of the Sunshine Law (emphasis added). This is a clear indication that the body or formal entity and members thereof are not one and the same and that the terms, "body" and "members", are not to be used interchangeably in interpreting the requirements of the law.

■ This court previously addressed the issue of what constituted a "public governmental body" in *Tribune Pub. Co. v. Curators of Univ. of Mo.*, 661 S.W.2d 575, 584 (Mo.App.1983). There we recognized the power to govern as being a factor in determining what constitutes a "public governmental body", stating that "the quintessence of a 'public governmental body' is the power to govern. . . . It defies semantics to believe that the legislature intended inclusion of bodies or entities barren of the power to govern in the definition of 'public governmental body'." *Id.* Unless otherwise authorized by the Board, individual members are not empowered to act and cannot govern. Thus, because members of a body cannot act individually. Groups of less than a quorum of the board would not logically fall within the definition of a "public governmental body" subject to the Sunshine Law.

In addition, as noted by respondents in their brief, although our appellate courts have never interpreted our Sunshine Law to be limited in its application to activities of a quorum of a covered body, they have, nonetheless, made numerous references to a quorum when deciding the act's application. *See Kansas City Star Co.*, 859 S.W.2d at 938 (court referenced "a gathering of a quorum of the Board" when determining if plaintiff had met its burden of persuasion); *Defino v. Civic Ctr. Corp.*, 780 S.W.2d 665, 671 (Mo.

App.1989) ("in the instant case, there was no quorum of any committee. . . . The Sunshine Law was never meant to require public notice of every meeting between a constituent and aldermen"); *Kansas City Star Co. v. Shields*, 771 S.W.2d 101, 103 (Mo.App.1989) (in holding that the city council member purposely violated the Open Meetings Law, the court noted that budgetary matters were discussed by a quorum of the council's finance committee). At the very least, we can glean from these cases that the courts, in determining whether there was a meeting by a public governmental body covered by the Sunshine Law, attached importance to the fact a quorum of the body was acting.

While it is true that decisions from other states ordinarily are of very little assistance in construing Missouri's Sunshine Law, we believe *Hispanic Education Committee*, cited by respondents is instructive and in keeping with the public policy of this state that "meetings, records, votes, actions, and deliberations of public governmental bodies be open to the public. . . ." § 610.011.1. In *Hispanic Education Committee* the court was called upon to decide whether board members, in numbers less than a quorum, discussing the hiring of a board member as superintendent, violated the Texas Open Meetings Law. The court in holding that it did not, observed that "[l]imiting board members' ability to discuss school district issues with one another outside of formal meetings would seriously impede the board's ability to function." *Hispanic Education Comm.*, 886 F.Supp. at 610. In so holding, the court, in part, was relying on the fact that without a quorum there could be no action taken and without action there could be no illegality. In addition, the court noted that there was no evidence of any systematic attempt to circumvent or avoid the purposes of the state's open meetings law. The clear implication from this is that if there had been, the court would have found a violation of the Open Meetings Law regardless of whether the quorum requirement was met. This is sound reasoning and balances the logic of adopting the "quorum requirement" against the need to prevent circumvention of the Sunshine Law by conducting public meetings

in a piecemeal fashion without a quorum being present.

Courts are not so naive as to be blind to the fact that those inclined to violate the Open Meetings Law could do so using the quorum requirement as a shield. This could be done by conducting, in effect, the equivalent of a "public meeting" in a series of "closed meetings" with numbers of less than a quorum in each such meeting, but totaling a quorum or more when taken together. In such closed meetings with less than a quorum, deliberations could be conducted and votes taken with a public meeting then being held to ratify publicly that which had already been done in private. This would violate the spirit of our Sunshine Law and would render an unreasonable result that was not intended by our legislature. *See David Ranken, Jr. Tech. Inst. v. Boykins,* 816 S.W.2d 189, 192 (Mo. banc 1991) (statutory construction should avoid unreasonable or unjust results).

Based on the foregoing reasons, we find that it was the intent of the legislature not to include within the definition of "public governmental body" a group of the body's members comprising less than a quorum. In other words, a meeting of less than a quorum does not constitute a meeting of a "public governmental body" when there is no intent to avoid the purposes of Chapter 610. This legislative intent reflects the legislature's desire to allow frank discussion at all times between individual members of a board, not just in formal public meetings, while still requiring them to meet in public when taking any binding action that will affect the public. This finding of legislative intent encompasses a safety net, much like the one found in § 610.010(5). There, the definition of "public meeting" excludes social gatherings for ministerial or social purposes as long as there is "no intent found to avoid the purposes of [Chapter 610]." § 610.010(5). This prevents public governmental bodies from avoiding the Sunshine Law by simply disguising their public meetings as informal social gatherings for ministerial or social purposes. We superimpose a like safety net here finding that it is the intent of the legislature that the Sunshine Law would apply to meetings of groups of less than a quorum of a "public govern-mental body" where a quorum or more of the body was attempting to avoid the purposes of the Sunshine Law by deliberately meeting in groups of less than a quorum in closed sessions to discuss and/or deliberate on public business then ratifying their actions as a quorum in a subsequent public meeting. The legislature did not intend to allow such abuse of the Sunshine Law. *David Ranken, Jr. Tech. Inst.,* 816 S.W.2d at 192.

The question then becomes whether there was a meeting of a quorum of the board which was improperly closed in violation of the Sunshine Law, and whether there was any intent to avoid the purposes of the Sunshine Law. If both are answered in the negative, then the appellants failed to carry their burden of persuasion and the ruling of the trial court sustaining respondents' motion for directed verdict was correct and will not be reversed.

In asserting that respondents had conducted closed meetings concerning Dr. Feltner's contract, appellants argue that it could be inferred from the manner in which the February 22 meeting was called and conducted that the respondents had been meeting and deliberating behind closed doors and had already decided the issue. The record reflects that there had been ongoing discussions among board members concerning Dr. Feltner and his contract over a period of time where views were expressed as to the effectiveness of his performance as superintendent. The trial court noted that there had been one-on-one contacts, personal and telephonic, where Dr. Feltner's performance was discussed, but that no poll had ever been taken as to whether his services should be retained. The trial court found that these discussions between board members were for information gathering purposes so that they could keep abreast of what was happening. Further, the trial court found there was a logical explanation as to why the vote to release Dr. Feltner played out the way it did aside from any discussions that occurred. As to Buford's statements concerning the lack of votes or support for Dr. Feltner, the evidence reveals that he had in his possession the evaluation sheets of Dr. Feltner which showed a lack of support for him among

three of the respondent board members. In addition, the vote was predictable given the well known 4 to 3 ideological split of the board, which was evident on votes other than those concerning Dr. Feltner.

Although the trial court did not specifically find that appellants failed to show that a "closed meeting" of a "public governmental body" had been held prior to the February 22 meeting, which is part of their burden of persuasion under § 610.027.2, it is clear from the trial court's findings and the record that appellants did not carry their burden. At best, the evidence reflects prior discussions of less than a quorum of the board. Thus, there is no evidence of a "closed meeting" of a "public governmental body". Further, there is no evidence of an intent to avoid the purposes of the Sunshine Law. Because the appellants failed to carry their burden of persuasion, the trial court was correct in sustaining respondents' motion for directed verdict at the close of appellants' evidence.

### D. Trip to Belton High School

█ Appellants next contend that respondents Buford, Caron, and Young violated the Sunshine Law when the three of them traveled to Belton High School on November 28, 1994, to meet with the principal and teachers there to discuss block scheduling at that school for possible implementation in the Center School District. There was a scheduled board meeting that evening to vote on whether to implement the block scheduling for the district. At the board meeting, all three respondents voted against the block scheduling proposal. The trial court found that there was nothing improper in the trip because it was nothing other than an informational gathering occurrence.

The group that took the trip to Belton did not comprise a quorum of the board. It takes a majority of the board in question, or in other words four, to constitute a quorum. § 162.301.3. Thus, there was no meeting of the board, closed or otherwise, because the three members who are alleged to have met did not constitute a "public governmental body" under our Sunshine Law. Further, there is no evidence in the record which would indicate an intent to avoid the pur-

poses of the Sunshine Law. Without a closed meeting of a public governmental body being shown, appellants failed to carry their burden of persuasion under § 610.027.2. Having failed to carry their burden of persuasion, the trial court was correct in ruling against appellants on respondents' motion for directed verdict.

Points I and II denied.

### III.

Point III deals with the trial court's denial of appellants' motion to amend their petition made at the close of their evidence to add the trip to Belton High School as an alleged violation. Appellants assert that the trial court abused its discretion in denying their motion. Despite denying the motion to amend, the trial court specifically ruled against appellants on the merits of this claim, which ruling we affirm *supra*. Having already affirmed the trial court's ruling on the merits of the claim appellants sought to add by amendment, the issue presented in this point concerning the amendment is moot.

### IV.

In this point, appellants claim that the trial court incorrectly applied the law in sustaining respondents' motion for directed verdict in that the trial court should have shifted the burden of persuasion to respondents, but did not because of various actions of appellants; i.e., appellants walking out of the February 22 board meeting in protest. In light of our holdings *supra*, that the trial court was correct in sustaining respondents' motion for directed verdict as to all four alleged violations, appellants' claim in this point is now moot.

### Conclusion

The trial court's order sustaining what was denominated by respondents as their motion for directed verdict at the close of appellants' evidence, but properly denominated a motion to dismiss, is affirmed.

All concur.