Lisa White Hardwick, Judge
Missouri Landowners Alliance and Marilyn O'Bannon (collectively, "Appellants") appeal the circuit court's entry of summary judgment in favor of Grain Belt Express Clean Line, LLC, ("Grain Belt"), the Monroe County Commission ("the Commission"), and the Monroe County Commissioners in their official capacities on Appellants' petition for declaratory judgment.[1] Appellants had sought a declaration that the permission the Commission granted to Grain Belt to use county roads to construct and maintain a proposed electric transmission line was void due to Sunshine Law violations. The court granted summary judgment on the basis that Appellants' claims were barred by the statute of limitations. On appeal, Appellants contend the court erred in granting summary judgment because Grain Belt failed to properly plead the statute of limitations as an affirmative defense and the record did not resolve the critical disputed fact issue of when the Sunshine Law violations were ascertainable. For reasons explained herein, we affirm.
FACTUAL AND PROCEDURAL HISTORY
Grain Belt is proposing to build a high-voltage electric transmission line from western Kansas to Indiana, a distance of approximately 750 miles. The portion of the proposed line in Missouri would travel approximately 206 miles and cross eight counties in northern Missouri. To build the Missouri segment of the line, Section 229.100, RSMo 2016,[2] requires Grain Belt to obtain the assent of the county commissions in each of the eight counties where it proposes to build the line on or across county roads or highways. The route of the line as proposed by Grain Belt would cross at least one public road or highway in Monroe County. On December 12, 2011, representatives of Grain Belt appeared before the Commission at a public meeting to "discuss possible installation of wind energy transmission lines."
Seven months later, at a public meeting on July 30, 2012, Grain Belt sought the *42 Commission's Section 229.100 assent to construct its transmission facilities on and across the county's public roads. The Commission gave its assent during this meeting, granting Grain Belt permission to "construct, erect, place, maintain, own and operate poles, lines, and other conduits, conductors and associated structures and equipment for utility purposes through, along, across, under and over the county maintained roads and highways of the County of Monroe, Missouri." The Commission's public notice of its agenda for the July 30, 2012 meeting did not mention Grain Belt, its proposed transmission line, or its request for the Commission's Section 229.100 assent. The minutes of the July 30, 2012 public meeting noted that the "Commission issued an order pursuant to Section 2909.100 [sic] RSMo 2000 to grant preliminary permission for access to Clean Line Energy Partners for utility purposes." The minutes did not include a record of the votes taken on that action.
At the Commission's August 3, 2012 public meeting, the Commission approved the minutes from the July 30, 2012 meeting. On August 9, 2012, the minutes of both the Commission's July 30, 2012 and August 3, 2012 meetings were published on page eight of the Monroe County Appeal , a local weekly newspaper of general circulation in Monroe County.
Representatives of Grain Belt appeared before the Commission at its June 17, 2013 public meeting to discuss the project. On July 12, 2013, the Commission signed a resolution in support of the project. The minutes of that meeting stated that the Commission signed such a resolution, and those minutes were published in the Monroe County Appeal.
On July 28, 2014, Missouri Landowners Alliance, which is a nonprofit corporation formed in early 2014 for the purpose of opposing the Grain Belt project, and Marilyn O'Bannon, who owns property on the right-of-way of the proposed line in Monroe County, filed a petition for declaratory judgment in Monroe County. In their petition, Appellants asked the court to declare that the permission the Commission granted to Grain Belt on July 30, 2012, was invalid and void because it was issued in violation of the Sunshine Law, Chapter 610, RSMo.[3] Specifically, Appellants asserted that, because the notice of the agenda for the July 30, 2012 meeting "made no mention of the issuance of a franchise or similar authority to Grain Belt to use the county roads," the Commission's assent to Grain Belt that was issued during that meeting was invalid and void under the Sunshine Law.
In its first amended answer to the petition, Grain Belt raised the affirmative defense of the statute of limitations. Grain Belt asserted that Appellants' claims were barred by Section 610.027.5, which provides, in pertinent part, that a suit for enforcement of the Sunshine Law "shall be brought within one year from which the violation is ascertainable and in no event shall it be brought later than two years after the violation." Grain Belt alleged that Appellants knew or should have known of the Commission's Section 229.100 assent issued to Grain Belt "sometime between July 30, 2012 and August 2013." Therefore, Grain Belt asserted that Appellants filed the suit after the limitations period had already run.
Appellants filed a motion for summary judgment in which they asserted that *43 there were no genuine issues of fact as to whether the permission that the Commission gave was void because the permission was issued in violation of the Sunshine Law. Specifically, Appellants alleged that there were no genuine issues of fact regarding (1) whether the Commission violated Section 610.020.1 by not mentioning anything about Grain Belt or its proposed transmission line as an item to be considered on its notice of the agenda for the July 30, 2012 meeting; and (2) whether the Commission violated Section 610.020.7 by not including in the minutes from that meeting a record of the votes taken on the Commission's action to grant Section 229.100 assent to Grain Belt. Grain Belt filed suggestions in opposition to the Appellants' summary judgment motion in which it argued that the statute of limitations barred the assertion of Appellants' Sunshine Law violation claims. The court entered an order denying Appellants' motion for summary judgment, finding that genuine issues of material fact remained regarding when the statute of limitations began to run for the alleged Sunshine Law violations.
Shortly thereafter, the Monroe County judge assigned to the case recused herself, and the case was transferred to another judge and moved to Callaway County. The circuit court in Callaway County held another hearing on Appellants' motion for summary judgment. Following the hearing, the court found that, even though there appeared to be "no disagreement among the parties" that the Commission violated the Sunshine Law in the two respects alleged by Appellants in their summary judgment motion, there was a genuine issue of fact remaining as to whether Appellants' petition was barred by the statute of limitations. The court stated that it was willing to hear and decide this question of fact in a bench trial but would leave the decision with the parties as to how to proceed.
After a period of additional discovery, Grain Belt filed a motion for summary judgment. In its motion, Grain Belt argued that the undisputed material facts established that the one-year statute of limitations barred Appellants' claims because the Sunshine Law violations were objectively ascertainable, at the very latest, on July 12, 2013, when the Commission signed a public resolution in support of the Grain Belt project during its public meeting. Appellants filed their petition over one year later, on July 28, 2014. In their response, Appellants argued that Grain Belt failed to preserve the statute of limitations defense by not properly pleading it in its answer and that factual disputes remained which precluded summary judgment.
Following a hearing before a different judge in Callaway County, the court entered summary judgment in favor of Grain Belt. In its judgment, the court found that the prior Callaway County judge had resolved the issue of the sufficiency of Grain Belt's pleading of the statute of limitations defense in favor of Grain Belt, and the court declined to reexamine that issue. The court further found that the Commission's Sunshine Law violations were objectively ascertainable by the general public, as well as by a reasonable person using reasonable diligence, on at least four separate dates set forth in Grain Belt's summary judgment motion. The latest of these dates was July 12, 2013, which was over one year before Appellants filed suit. Therefore, the court granted Grain Belt's motion for summary judgment. Appellants filed this appeal.
STANDARD OF REVIEW
Appellate review of summary judgment is essentially de novo.
*44 ITT Commercial Fin. Corp. v. Mid-Am. Marine Supply Corp. , 854 S.W.2d 371, 376 (Mo. banc 1993). We review the record in the light most favorable to the party against whom the judgment was entered. Wills v. Whitlock , 139 S.W.3d 643, 646 (Mo. App. 2004). However, we take as true the facts set forth in support of the summary judgment motion unless contradicted by the non-movant's response. ITT , 854 S.W.2d at 376.
Summary judgment is appropriate when there are no genuine issues of material fact and the movant is entitled to judgment as a matter of law. Rule 74.04(c). Where, as in this case, the movant is the defendant, the movant establishes the right to judgment as a matter of law by showing one of the following:
(1) facts negating any one of the claimant's elements necessary for judgment; (2) that the claimant, after an adequate period of discovery, has not been able to-and will not be able to-produce evidence sufficient to allow the trier of fact to find the existence of one of the claimant's elements; or (3) facts necessary to support his properly pleaded affirmative defense.
Roberts v. BJC Health Sys. , 391 S.W.3d 433, 437 (Mo. banc 2013). We will affirm a summary judgment under any theory supported by the record. Id.
ANALYSIS
In Point I, Appellants contend the court erred in granting summary judgment in favor of Grain Belt based on its affirmative defense that the statute of limitations barred Appellants' claims. Appellants argue that Grain Belt waived that affirmative defense by not properly pleading it in its first amended answer.
Rule 55.08 requires a party to "set forth all applicable affirmative defenses" by providing "a short and plain statement of the facts showing that the pleader is entitled to the defense." "Bare legal assertions are insufficient to plead an affirmative defense." Reverse Mortg. Solutions, Inc. v. Estate of Hunter , 479 S.W.3d 662, 668 (Mo. App. 2015). Where a party pleads only conclusory statements without pleading the specific facts required to support the affirmative defense, the party has failed to adequately raise the affirmative defense, and it fails as a matter of law. Id. The purpose of this rule is "to ensure that an opposing party is informed of and prepared to address the issues being raised by the defense." Dieser v. St. Anthony's Med. Ctr. , 498 S.W.3d 419, 429 (Mo. banc 2016). With regard to a statute of limitations affirmative defense in particular, "the defending party 'must plead the very provision on which [it] depends.' " Scott v. King , 510 S.W.3d 887, 893 (Mo. App. 2017) (quoting Bateman v. Platte Cty. , 363 S.W.3d 39, 42 (Mo. banc 2012) ).
In their petition, Appellants alleged that the Commission's assent to Grain Belt was issued in violation of the Sunshine Law because the Commission failed to mention, in its notice of the agenda for the July 30, 2012 meeting, that it was considering granting permission to Grain Belt to use the county roads.[4] In its first amended answer to this claim, Grain Belt asserted the affirmative defense of statute of limitations, stating:
Plaintiffs' claims are barred by the applicable statute of limitations, including the provisions of Section 610.027.5. Plaintiffs knew or should have known of *45 the Section 229.100 assent or consent issued to Defendant Grain Belt Express by the Monroe County Commission sometime between July 30, 2012 and August 2013. Plaintiffs filed this suit after the limitations period already ran.
Grain Belt satisfied the requirement that it plead the provision on which it was depending by citing Section 610.027.5, which requires that a suit for enforcement of the Sunshine Law be brought within one year from which the violation is ascertainable. To support its contention that this statute barred Appellants' claims, Grain Belt asserted that Appellants knew or should have known of the Section 229.100 assent "sometime between July 30, 2012 and August 2013."
Appellants argue this was insufficient to factually support Grain Belt's statute of limitations defense because the event that triggered the running of the statute was not when the Commission's issuance of its assent became ascertainable but, rather, when the Commission's Sunshine Law violation became ascertainable. While Appellants are correct that the event that triggered the running of the statute was when the Commission's Sunshine Law violation became ascertainable, that event also happened to be when the Commission's action-the giving of its assent-became ascertainable. As further explained in our discussion of Point II, infra , when it was ascertainable that the Commission issued its assent to Grain Belt during the July 30, 2012 meeting, it was also ascertainable that the notice of agenda for that meeting failed to mention that the Commission was considering that action.
Nevertheless, Appellants argue that Grain Belt was required to plead facts showing how or why Appellants should have known, between July 30, 2012 and August 2013, that the Commission had given its assent to Grain Belt. We disagree. While a party pleading an affirmative defense must allege ultimate facts, the party does not need to allege evidentiary facts. Int'l Div., Inc. v. DeWitt & Assocs., Inc. , 425 S.W.3d 225, 229 (Mo. App. 2014). Facts explaining how or why Appellants should have known within the time frame alleged that the Commission granted its assent and, in doing so, violated the Sunshine Law, are evidentiary facts. Here, Grain Belt alleged the ultimate facts that Appellants' claims were barred by the statute of limitations set forth in Section 610.027.5 because Appellants should have known, between July 30, 2012 and August 2013, that the Commission granted its assent, and Appellants filed their petition after the statute of limitations had run.[5] These facts were sufficient to ensure that Appellants were informed of and prepared to address the issues being raised by Grain Belt in its statute of limitations affirmative defense. Point I is denied.[6]
*46 In Point II, Appellants contend the circuit court erred in granting Grain Belt's motion for summary judgment because the record did not resolve the critical disputed fact of the date that the Sunshine Law violations were ascertainable. Appellants argue this fact remains in dispute and should be determined by a jury.
The parties disagree on the test to be applied in determining when a Sunshine Law violation is "ascertainable" under Section 610.027.5. Grain Belt asserts that the test for ascertainment is when the alleged violation objectively could have been discovered or when it was made known, while Appellants argue that the test is when a reasonable person would have been put on notice of a potentially actionable injury. These tests, however, are consistent with each other and, when applied to the undisputed facts of this case, reach the same result. To understand this, it is necessary to examine the history behind the ascertainment standard and its application to Sunshine Law violations.
This court first addressed the issue of what it means for Sunshine Law violations to be "ascertainable" in Colombo v. Buford , 935 S.W.2d 690, 695 (Mo. App. 1996). Because this was an issue of first impression, we sought guidance from the Supreme Court's standard for determining when damages are ascertainable for purposes of Section 516.100, the statute of limitations for civil actions. Section 516.100 provides, in pertinent part, that a civil action is deemed to accrue not "when the wrong is done or the technical breach of contract or duty occurs, but when the damage resulting therefrom is sustained and is capable of ascertainment." We noted that, in Sheehan v. Sheehan , 901 S.W.2d 57, 58-59 (Mo. banc 1995), our Supreme Court held that the test for determining when damages are ascertainable is an objective test, in that damages are ascertainable "when the fact of damage can be discovered or made known, rather than when a plaintiff actually discovers the injury or wrongful conduct." Colombo , 935 S.W.2d at 695.
Applying this standard in the context of Sunshine Law violation claims, we explained that "[t]he violation of the Sunshine Law and the damage created thereby are one in the same-a closed meeting of a public governmental body excluding the oversight by and input of the public. In other words, when the violation is ascertainable, so is the damage." Id. Therefore, we held that the objective standard of ascertainment that the Supreme Court applied in Sheehan should be applied to Sunshine Law violation claims such that the determinative question is when could the alleged violation have been discovered or when was it made known. Id.
After we decided Colombo , the Supreme Court discussed the ascertainment standard further in Powel v. Chaminade College Preparatory, Inc. , 197 S.W.3d 576, 580-84 (Mo. banc 2006). The specific issue in Powel was when the statute of limitations begins to run on a petition for damages based on a repressed memory of sexual abuse. Id. at 577. The plaintiff in Powel asserted that the statute should begin to run when the plaintiff becomes aware that he suffered damages, while the defendants asserted that the statute should begin to run at the time of the wrongful act. Id. at 581-82. The Court rejected both of these approaches, noting that the plaintiff's approach was subjective and the defendants' approach failed to account for situations where damages are not capable of ascertainment at either the time of the wrong or the time of discovery of the wrong and *47 resulting damages. Id. at 581-82. Instead, the Court ruled that damages are capable of ascertainment and, therefore, the statute of limitations begins to run, "when a reasonable person would have been put on notice that an injury and substantial damages may have occurred and would have undertaken to ascertain the extent of the damages." Id. at 584.
Both Appellants and Grain Belt treat the standard articulated in Powel as a departure from the standard applied in Sheehan and adopted in Colombo . In fact, the parties appear to treat the Powel standard as being a subjective test that allows for consideration as to when plaintiffs actually learned of the injury or wrongful conduct and damages.[7] They are mistaken. In Powel , the Court expressly stated that its standard was consistent with Sheehan 's approach that damages are capable of ascertainment when the plaintiff " 'objectively could have discovered or made known the fact of damage. ' " Id. (quoting Sheehan , 901 S.W.2d at 59 ).
Indeed, since Powel , the Court has referred to Sheehan 's"when the fact of damage can be discovered or made known" standard and Powel 's"when a reasonable person would have been put on notice than an injury and substantial damages may have occurred and would have undertaken to ascertain the extent of the damages" standard as being the same "objective test" for determining when damages are capable of ascertainment. See Farrow v. Saint Francis Med. Ctr. , 407 S.W.3d 579, 599 (Mo. banc 2013). Therefore, pursuant to Colombo , Farrow , and the cases cited therein, a Sunshine Law violation is ascertainable when the violation could have been discovered or was made known, or when a reasonable person would have been put on notice that a violation may have occurred and would have undertaken to ascertain the extent of the violation.
The undisputed facts in this case indicate that the Sunshine Law violations occurred on July 30, 2012, when the Commission issued an order granting Grain Belt the Section 229.100 assent without having included that action as an item on its agenda, and on August 3, 2012, when the Commission approved the minutes of the July 30, 2012 meeting even though the minutes failed to include a record of the votes on the Grain Belt action. On August 9, 2012, the minutes of the Commission's July 30, 2012 meeting were published in the Monroe County Appeal , a local weekly newspaper of general circulation in Monroe County. The minutes showed that the Commission issued an order granting permission to Grain Belt but did not show a record of the votes on that action.
When the minutes of the Commission's July 30, 2012 meeting were published in the local newspaper, both Sunshine Law violations could have been discovered. After seeing that the Commission granted permission to Grain Belt during the July 30, 2012 meeting, any member of the public, including Appellants, could have obtained a copy of the notice of agenda for that meeting to determine whether Grain Belt's request was included on that agenda. That the Commission failed to include a record of the votes on their action to grant permission to Grain Belt was readily apparent in the published minutes. The published minutes were sufficient to put a *48 reasonable person on notice that one or more Sunshine Law violations may have occurred, and a reasonable person would have undertaken to ascertain the extent of those violations. Therefore, the Sunshine Law violations were ascertainable, as a matter of law, as of August 9, 2012.
Because the Sunshine Law violations were ascertainable as of August 9, 2012, Section 610.027.5 required Appellants to file their claims based upon those violations within one year from that date. Appellants filed their petition on July 28, 2014. Hence, the circuit court properly found that the statute of limitations barred Appellants' claims. The court did not err in granting summary judgment in favor of Grain Belt. Point II is denied.
CONCLUSION
The judgment is affirmed.
All Concur.

The Monroe County Commissioners and the Commission filed a statement with this court advising that they did not intend to participate in this appeal.

All statutory references are to the Revised Statutes of Missouri 2016.

Appellants also asserted that, even if the Commission's permission was validly granted, the Commission rescinded this permission on January 24, 2014. The circuit court found this purported rescission to be "irrelevant," and the effectiveness of the purported rescission is not at issue in this appeal.

Appellants did not raise the other Sunshine Law violation, which was the Commission's failure to include a record of the votes taken in the minutes of the July 30, 2012 meeting, in their petition. Appellants asserted this Sunshine Law violation for the first time in their motion for summary judgment.

That Grain Belt pleaded ultimate facts and not bare legal conclusions distinguishes this case from the cases cited by Appellants in their brief. See, e.g., ITT , 854 S.W.2d at 383 ; Peterson v. Discover Prop. & Cas. Ins. Co. , 460 S.W.3d 393, 410-11 (Mo. App. 2015) ; Ditto, Inc. v. Davids , 457 S.W.3d 1, 15 (Mo. App. 2014) ; Delacroix v. Doncasters, Inc. , 407 S.W.3d 13, 38 (Mo. App. 2013) ; and Echols v. City of Riverside , 332 S.W.3d 207, 211 (Mo. App. 2010) ; and Stewart Title Guar. Co. v. WKC Rest. Venture Co. , 961 S.W.2d 874, 884 (Mo. App. 1998).

While the appeal was pending, Grain Belt filed a supplemental legal file containing its original answer and affirmative defenses. In its brief, Grain Belt relied upon the changes in the wording of its affirmative defenses between its original answer and first amended answer to argue in its response to Point I that Appellants had waived any challenges to the sufficiency of the pleading of the affirmative defenses in Grain Belt's first amended answer. Appellants filed a motion to strike the supplemental legal file and all references to it in Grain Belt's brief. We took the motion to strike with the case. The original answer and Grain Belt's arguments regarding that answer are irrelevant to our disposition of Point I. Therefore, the motion to strike is denied.

Specifically, Appellants argue that, under Powel 's"reasonable person" standard, we should consider affidavits from O'Bannon and several members of the Missouri Landowners Alliance as to when they actually learned of the Sunshine Law violations. Grain Belt argues that we should disregard Powel 's"reasonable person" standard because the standard is at odds with "the objective determination of ascertainability for purposes of the statute of limitations in Section 610.027.5."